■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM BLAN- CHARD, Also Known as WILLIAM BLANCHETT, Appellant. — Appeal by defen- dant from a judgment of the Supreme Court, Kings County (Brownstein, J.), rendered September 6, 1978, convicting him of robbery in the first degree (two counts), robbery in the second degree (two counts), attempted robbery in the first degree (three counts) and attempted robbery in the second degree (three counts), upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. No issues have been raised with respect to the facts. Pursuant to *People v Sandoval* (34 NY2d 371), the trial court ruled that if defendant chose to testify, the prosecution would be permitted to cross- examine him with respect to his prior criminal record. Defendant did not take the stand at the trial. During the course of the trial, however, one of the prosecution witnesses testified about an encounter he had with defendant and his codefendant (whose conviction was affirmed by this court in *People v Bray* [81 AD2d 1044]) just prior to the occurrence of the crimes charged. Over defense counsel's objection, the witness was permitted to testify that defendant "started saying I set him up, I had sent him to jail." The trial court ruled that the testimony was admissible to show that defendant and his codefendant were together in the area just prior to the occurrence of the crimes charged. The court also found that the conversation established a prior relationship between the witness and defendant and was therefore relevant to the question of identification. In his summation, the prosecutor referred to the testimony in question. We conclude that the admission of this testimony was error. Where, as here, the defendant in a criminal trial has not taken the stand or placed his character in issue, the general rule is that the prosecution is prohibited from introducing evidence of his past criminal record *(People v Mullin,* 41 NY2d 475 [error for the prosecution to elicit testimony that defendant's photograph was taken from the criminal file]; *People v Robbins,* 38 NY2d 913). This rule derives from a recognition of the human tendency to more readily believe that a person is guilty of a crime if he has a prior criminal history, and the possibility that a jury may convict a defendant on that basis even though not convinced beyond a reasonable doubt of his guilt of the crime charged *(People v Ventimiglia,* 52 NY2d 350). A defendant is entitled to have his guilt or innocence determined solely upon the evidence tending to prove the crime charged, uninfluenced by irrelevant and prejudicial facts and circumstances *(People v Cook,* 42 NY2d 204). The rule is not absolute, however, and ulti- mately, where the evidence of past criminality is probative of an issue in the case, its admissibility will depend upon a balance between its probative value versus its potential for prejudice *(People v Ventimiglia, supra; People v Santar- elli,* 49 NY2d 241; *People v Allweiss,* 48 NY2d 40; *People v Molineux,* 168 NY 264). As our dissenting colleague points out, the evidence of past criminality which was admitted in *Ventimiglia* was extremely prejudicial, but there the court found that the probative value of that evidence outweighed the resulting prejudice. The court stated *(People v Ventimiglia,* 52 NY2d 350, 355-356, *supra):* "[W]here defendants charged with murder, kidnapping and conspiracy have stated as part of their planning that they have a place for disposing of the

body 'where we put people * * * and they haven't found them for weeks and months', the statement is admissible because its probative value as to premeditation of the murder and as to the plan of the conspiracy outweighs the prejudice resulting from the admission implicit in the statement that defendants have committed prior murders." While we would agree with the dissent that, in implying that defendants charged, *inter alia,* with murder had committed previous murders, the *Ventimiglia* statements were more prejudicial than the instant one, which reveals an unspecified past criminal record, the probative value of the *Ventimiglia* statements also was far greater. The statement at bar indicates that the witness saw defendant and his codefendant together before the commission of the crime charged, and that the witness was able to identify defendant by virtue of a prior encounter with him. This statement constituted circumstantial evidence of the fact that defendant and his codefendant were together when the crime was committed, but its probative value was limited because of the testimony of several of the victims of the crime which also placed the two defendants together at the actual scene of the crime charged. Thus, the statement, which exposed defendant's past criminality, was merely cumulative on the issue of identification. The cumulative nature of evidence which exposes a defendant's past criminality, is a factor to be weighed in balancing its probativeness versus its prejudice (see *People v Ventimiglia,* 52 NY2d 350, 360, *supra;* see, also, *People v Stanley,* 67 Cal 2d 812, 818-819). Another factor to be weighed is the manner in which the evidence came into the case. Here, the evidence came in as part of the prosecution's direct case rather than in rebuttal of a defense offered by defendant (see *People v Ventimiglia, supra; People v Tas,* 51 NY2d 915). Further, the purpose served by the challenged testimony could have been achieved without eliciting the prejudicial detail that defendant had previously been in jail (see *People v Cook,* 42 NY2d 204, *supra).* Balancing these factors, we conclude that the potential prejudice of the challenged testimony far outweighed its probative value (see *People v Conyers,* 52 NY2d 454). Finally, we cannot conclude that the error was harmless (cf. *People v Cook, supra; People v Crimmins,* 36 NY2d 230). There is a view of the evidence which indicates that while defendant was present during the crime, he did not participate in it or share his codefendant's intent. On this record, it cannot be said that the jury's verdict was uninfluenced by this evidence. In fact, during its deliberations, the jury requested that the offending witness' testimony be read back to them. "In the jury's eyes [this reference] to the defendant's criminal background may have made 'the difference between the trial of a man presumptively innocent of any criminal wrongdoing and the trial of a known convict' *(United States v Reed,* 376 F2d 226, 228)" *(People v Mullin,* 41 NY2d 475, 480, *supra).* Therefore, reversal and a new trial are required. Hopkins, J.P., Titone and Lazer, JJ., concur.

Thompson, J., dissents and votes to affirm the judgment, with the following memorandum, in which Damiani, J., concurs: A prosecution witness testified that shortly before the robberies which were the subject of this case, the defendant Blanchard asked the witness if he remembered him. When the witness said no, defendant accused the witness of setting him up and sending him to jail. At that point, defendant's colleague pulled a gun on the witness, who then fled. The majority believes that this vague reference to a prior jail term was inadmissible evidence of the defendant's prior record, was prejudicial, may have been crucial to the jury's determination and was of only slight probative value. Although I agree with the majority that that general rule is that the prosecution cannot introduce a defendant's past criminal record into evidence when the defendant has not taken the stand or placed his character in issue, I cannot agree with the majority that the general rule controls this case

or that the remarks in question in any way invalidate the conviction or require a new trial. I begin with the general proposition that when a ruling as to admissibility of testimony has been made, appellate courts should respect the sound discretion of the trial court in making that ruling. Neither the arguments of the majority nor recent case law convinces me that the trial court's ruling should be disturbed. The reference to a "set-up" and a prior jail term is extremely vague. There is no specification of the nature of a prior crime or even what constituted the "set-up". The majority believes that the testimony in question cannot be harmless since there is a "view" of the evidence which would have exonerated the defendant. There are almost always differing "views" of the evidence. That is why there are hung juries. Here the jury might just as well have viewed the defendant's statement as an accusation that the witness had connived to set the defendant up; there was no admission of past guilt. Even though the jury asked for the questioned testimony to be reread, second-guessing the jury does not seem particularly helpful in the majority's second-guessing of the trial court. The trial court concluded that the statement was admissible as to identification of the defendant and his location at the scene with a codefendant. Our review is best confined to the record, the statements made and the applicable law. I agree with the trial court that the witness' testimony is probative as to identification and as to presence at the scene. The fact that other witnesses testified to various aspects of the events in question does not, in my estimation, render the testimony solely cumulative or reduce its value. In *People v Ventimiglia* (52 NY2d 350, 355), the Court of Appeals held it was permissible for a witness to testify that one defendant had described his place for disposing of dead bodies as a place "'where we put people * * * and they haven't found them for weeks and months'". That statement seems to me to be extremely prejudicial but also highly probative. In terms of prejudice, the instant remarks are pale and insignificant by comparison. The majority's view that the *Ventimiglia* remarks were of more probative value than those in this case seems just that: a view. That does not show to me that the remarks here were of such lesser probative value in the context of this case as to render them inadmissible or to tip the balance toward prejudice and away from probative value. In *Ventimiglia (supra),* the Court of Appeals commented that the time remarks are admitted, on rebuttal rather than on the direct case, is a relevant factor in the balancing process. But in *Ventimiglia,* the prior crimes/body disposal remarks were made by the prosecution's prime witness in his direct testimony. In *Ventimiglia (supra,* p 358), the Trial Judge had overruled defendants' objection to those remarks "not only when first made, but also when repeated as part of a motion for a mistrial *at the end of the People's case* and when at the jury's request the testimony was *reread* to them during deliberation" (emphasis supplied). Thus, in *Ventimiglia,* prejudicial but probative testimony about prior crimes was permitted during the prosecutor's direct case and, as in the instant case, the remarks were requested to be reread by the jury. The parallels between *Ventimiglia* and this case are clear; the differences are that the *Ventimiglia* remarks were far more inflammatory and the references to past crimes were far more detailed: describing a place where defendants had dumped dead bodies successfully is far more informative as to past crimes than a vague accusation of a "set-up" and a trip to jail. After reading *Ventimiglia* and the standards there set forth and after considering the whole record in this case, I find no reason to order a new trial. The majority's effort to distinguish *Ventimiglia* because the admittedly more prejudicial statements were more probative than the less prejudicial and less probative statements here is not persuasive. The balance must be struck in this case. I find nothing in the majority's arguments or in the defendant's brief

which convinces me that the balance was improperly struck by the trial court in admitting the disputed testimony. I would affirm the conviction.