■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY SMALLS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Leahy, J.), rendered June 22, 1979, convicting him of attempted murder in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. Defendant was charged, *inter alia,* with attempted murder in the second degree, arising out of the shooting of one Cleveland Layne in a tavern on October 29, 1978. Prior to trial, defendant moved to preclude the People from introducing, on their direct case, evidence relating to Layne's testimony against defendant in a prior criminal trial in 1972 which resulted in his conviction for manslaughter in the first degree arising out of the shooting death of one Barber Mitchell. It was argued that the prejudicial effect of such testimony would far outweigh its probative value. Alternatively, it was requested that the People be permitted to elicit from Layne the fact that he had previously testified against defendant, but not the nature of the underlying charges. Criminal Term ruled that it would permit introduction of the underlying facts and circumstances material and relevant to the earlier incident, but not the fact that defendant was convicted of manslaughter and was sentenced. At trial the following testimony was elicited

from Layne on the People's direct case: "Q. Did you recognize the man who shot you? A. Yes. Q. Who is he? What is his name? A. Larry Smalls. Q. Did there come a time in 1970 or 1971 when you had seen Mr. Smalls before? A. Yes. Q. And under what circumstances did you see Smalls then? A. In the courthouse. Q. Did you testify against him? A. Yes. Q. Did you testify against him for killing Barbara Mitchell? * * * A. Yes, I did. * * * Q. Please tell us the circumstances that led you to testify in that courtroom back in 1970 or '71? A. I was subpoenaed to go to the courthouse. I was out with three young ladies that night. * * * Q. All right, Mr. Layne, what happened in 1970 or '71 that led you to testify in that courtroom? A. He shot Barbara Mitchell. Q. And did you see that happen? A. Yes, I did. Q. And how many days did you go to Court? A. Three days. Q. And you testified? A. Yes." Thereafter, during his summation, the prosecutor made several references to defendant's prior trial and conviction. He stated: "What did Smalls do? He shot the gun and it went through [Layne's] neck and up his mouth. And he walked rightout [sic]. Just like he left Barbara Mitchell at that time on the street". An objection taken to this statement was sustained by the court and the jury was instructed to disregard it. Moments later, the prosecutor commented: "Look at Larry Smalls sitting there now behind those sunglasses, not a flicker of emotion on his face. Because cold-blooded killers don't have any emotions or you [sic] couldn't do the things they do * * * He was going to blow the brains out of Cleveland Layne because Cleveland Layne testified against him once before", and later: "You know, Cleveland Layne had a lot of guts to take the stand and testify. He had a lot of guts to take the stand eight years ago and testify". We agree with the defendant that the admission of the afore-mentioned testimony, coupled with the prosecutor's comments in regard thereto, served to deprive him of his right to a fair trial. "It is fundamental that evidence of uncharged crimes is not admissible if the sole purpose is to show that the defendant was predisposed to commit the crime charged" (*People v Allweiss,* 48 NY2d 40, 46). Where the evidence of a prior crime, however, is sought to be introduced as probative of the crime charged, the trial court is required to engage in a process of balancing, "in which both the degree of probativeness and the potential for prejudice of the proffered evidence must be weighed against each other" (*People v Ventimiglia,* 52 NY2d 350, 359-360). Here, while testimony as to the prior crime may have been probative of the issues of motive and identity (*People v Molineux,* 168 NY 264), it was not necessary that the jury be made aware that the prior crime involved a "killing" in which the defendant shot Barbara Mitchell. It would have been more than sufficient for Layne to have told the jury that he had testified against the defendant at a prior criminal trial as a result of which the defendant had been convicted. In this way a proper balance would have been struck. The probative value of the evidence could have been preserved while, at the same time, the defendant would not have been unduly prejudiced (*People v Ventimiglia, supra*). Because the prosecutor improperly elicited the fact that the defendant had previously killed an individual with a gun, the jurors may have voted to convict the defendant on the basis of his prior criminal history (especially since the instant crime involved shooting with intent to kill), rather than upon their being convinced beyond a reasonable doubt of his guilt of the crime charged (*People v Ventimiglia, supra; People v Blanchett,* 83 AD2d 905). Moreover, the prosecutor's summation, in which he stressed the prior homicide characterized the defendant as a "cold-blooded" killer, and stated that the defendant "walked rightout [sic]. Just like he left Barbara Mitchell at that time on the street", was clearly improper (*People v Termini,* 65 AD2d 825, 826). The summation was also prejudicial in that the prosecutor repeatedly asserted that the

defendant's alibi witness and another witness, a bar maid who testified that she did not see the defendant at the bar that night, were lying (see *People v Schaaff,* 71 AD2d 630; *People v Burnside,* 52 AD2d 626). Under the circumstances, defendant was denied a fair trial and a new trial is required. Brown, J. P., Niehoff and Rubin, JJ., concur.

Boyers, J., dissents and votes to affirm the judgment, with the following memorandum. I cannot agree with my learned colleagues that the defendant was denied a fair trial. In my view, the testimony adduced at trial with respect to the underlying facts and circumstances of the defendant's prior criminal conduct was properly admitted because it bore upon material aspects of the People's case other than the defendant's general propensity to engage in criminal conduct, namely, the identity of the defendant and motive. Thus, notwithstanding the potential for incidental prejudice, the highly probative value of such testimony justified its admission (see *People v Beam,* 57 NY2d 241; *People v Molineux,* 168 NY 264). At trial, an alibi defense was offered through the testimony of the defense witness Lillian King. The People's case rested in main upon the identification testimony of the victim, Cleveland Layne. Therefore, the identity of Layne's assailant was clearly the paramount issue in the case and evidence of the prior conduct of defendant was admissible, for "unless the defendant's identity is *conclusively* established, the identity exception set forth in *Molineux* should apply to enable the prosecution to adequately prove the defendant's identity" (*People v Condon,* 26 NY2d 139, 142; *People v Beam, supra,* p 251). Further, the testimony adduced at trial with respect to defendant's prior criminal conduct tended to establish specific motive which prompted the actions underlying the particular crime charged and was thus admissible (see discussion in *People v Molineux, supra,* pp 293-297). While the majority grudgingly acknowledges that testimony with respect to the underlying facts and circumstances of defendant's prior criminal behavior "may have been probative of the issues of motive and identity", they are persuaded that the defendant was unduly prejudiced by virtue of the fact that the prosecutor elicited testimony from the victim Layne that the defendant had shot and killed an individual on a prior occasion. I disagree. Recognizing that "[t]here is no litmus paper test for determining when the probative value of the evidence outweighs its potential for prejudice" (*People v Ventimiglia,* 52 NY2d 350, 359), the Court of Appeals of our State has furnished some guidelines, stating (*supra,* pp 359-360): "In final analysis the process is one of balancing in which both the degree of probativeness and the potential for prejudice of the proffered evidence must be weighed against each other (*People v Santarelli* [49 NY2d 241]; *People v Allweiss* [48 NY2d 40]). Factors which play a part in measuring probative value are 'the degree to which the evidence persuades the trier of fact that the particular fact exists and the [logical] distance of the particular fact from the ultimate issues of the case' (Dolan, Rule 403: The Prejudice Rule in Evidence, 49 So Cal L Rev 220, 233). Further, as the Supreme Court of California noted in *People v Stanley* (67 Cal 2d 812, 818-819): 'On the issue of probative value, materiality and necessity are important. The court should not permit the admission of other crimes until it has ascertained that the evidence tends logically and by reasonable inference to prove the issue upon which it is offered, that it is offered on an issue material to the prosecution's case, and is not merely cumulative.' Important in the weighing process will also be how the evidence comes into the case, that is, whether at the instance of the People initially, or in rebuttal to a defense offered by defendant (*People v Tas,* 51 NY2d 915; *People v Santarelli, supra;* see *People v Allweiss, supra*)." At bar, the testimony with respect to defendant's prior criminal conduct was neither cumulative nor of considerable distance from the ultimate issues in the case. Indeed, it was highly probative of both the identity

of the assailant and the specific rationale for the acts upon which the underlying crime charged was founded (see *People v Allweiss,* 48 NY2d 40, 49, *supra; People v Molineux,* 168 NY 264, 295-297, *supra*) and was therefore properly admitted. While the comments made by the prosecutor upon summation would certainly have been better unsaid, they do not suffice to warrant reversal of the conviction on the ground that they deprived the defendant of a fair trial. The majority of assignments of legal error were not preserved for appellate review (see CPL 470.05, subd 2; *People v Thomas,* 50 NY2d 467), and where appropriate objection was made, Criminal Term promptly instructed the jury to disregard the improper comment. Further, based upon a review of the record, I cannot conclude that under the circumstances of this case, reversal as a matter of discretion in the interest of justice is warranted (see CPL 470.15, subd 3, par [c]). Accordingly, I vote to affirm the judgment of conviction.