THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
SALVATORE GALLINA, Appellant.

Second Department, September 6, 1983

APPEARANCES OF COUNSEL

*Stephen P. Scaring, P. C. (Salvatore S. Russo* of counsel), for appellant.

*Elizabeth Holtzman, District Attorney (Barbara D. Underwood, Michael J. Halberstam* and *Alan D. Rubinstein* of counsel), for respondent.

### OPINION OF THE COURT

Titone, J.

■ Defendant Salvatore Gallina appeals from a judgment convicting him, following a jury trial, of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41) and imposing an indeterminate sentence of six and one-half years to life imprisonment. He contends that recordings of certain conversations overheard as the result of an eavesdropping warrant should have been suppressed because of a failure to comply with several statutory requisites governing electronic surveillance. In addition, he urges, in the alternative, that since these conversations concerned uncharged criminal conduct they were inadmissible in any event. We agree that the evidence should have been excluded and we, therefore, reverse the judgment of conviction.

The prosecution has its genesis in February, 1981, when a confidential informant introduced a New York City police detective to one Willie Kelly, a self-acknowledged narcotics dealer. Kelly gave the detective his telephone number to arrange future drug sales and a pen register was installed on Kelly's telephone line without a warrant first being obtained.[1] On March 3 and March 12, Kelly sold a quantity of heroin to the detective.

---

1. A pen register is a device that records the telephone numbers of outgoing calls but does not monitor them. Since subscribers know that the telephone company keeps such records for billing purposes, it has been held that there is no expectation of privacy and Fourth Amendment rights are not implicated (*Smith v Maryland,* 442 US 735; *United States v New York Tel. Co.,* 434 US 159; cf. *People v Di Raffaele,* 55 NY2d 234, 241-242).

Investigators were stymied, however, in ascertaining Kelly's source. Consequently, in May, 1981, the Kings County District Attorney applied for and obtained the first of a series of eavesdropping warrants. The initial warrants authorized the interception of communications over Kelly's telephone. As a result of the information acquired, four additional warrants were procured. They authorized the placing of a "bug" and the monitoring of telephonic communications at Salvatore's Meat Market where defendant and his brother worked. Insofar as here pertinent, the conversations took place on October 21, 1981 and concerned a future narcotics sale.

Indictments against Willie Kelly, the defendant, and others were filed in January, 1982. Defendant was charged in connection with the March 3 and March 12 sales by Kelly.[2] His pretrial motion to suppress the eavesdropping evidence was denied in all respects. He was convicted of only the March 3 sale.

At the outset, we note that none of defendant's conversations were intercepted as a result of the Kelly wiretaps and defendant had no proprietary interest in Kelly's telephone. Inasmuch as defendant cannot vicariously assert Kelly's rights, he lacks standing to raise any substantive claims concerning those warrants (*People v Sergi,* 96 AD2d 911; *People v Sardegna,* 91 AD2d 671; cf. *Alderman v United States,* 394 US 165, 174; *People v Edelstein,* 54 NY2d 306, 309). While he would have standing to challenge a failure to promptly seal the tapes in accordance with CPL 700.50 (subd 2), as "this requirement goes to the very integrity of the tapes, rather than to the intrusion created by the wiretap" (*People v Edelstein, supra,* p 309), the record establishes that no use was made of any conversation intercepted as a result of those wiretaps other than to furnish a basis for the application for a warrant to engage in electronic surveillance at the meat market and that the first warrant concerning the meat market was issued prior to the time that the obligation to seal the tapes from the second Kelly warrant arose. Hence, the legal significance of any delay in sealing is academic (*People v Seidita,* 49

---

**2.** Kelly pleaded guilty and testified for the People at defendant's trial.

NY2d 755, 756; *People v. Weiss,* 48 NY2d 988, 989; *People v Versace,* 73 AD2d 304, 308).

We turn, then, to the challenges made to the warrants directed to the meat market. Defendant contends that these warrants should not have issued because the affidavits in support failed to establish that investigative techniques other than electronic surveillance would not have sufficed (CPL 700.20, subd 2, par [d]; 700.15, subd 4), that the tapes were not timely sealed, and that there was a gap in the issuance of an extension warrant during which time the eavesdropping devices remained in place in violation of CPL 700.40 and 700.35 (subd 2). As we shall demonstrate, the latter contention is dispositive.

As noted in the classic dissents of Justices HOLMES and BRANDEIS in *Olmstead v United States* (277 US 438, 469 *et seq.*), electronic surveillance is a most serious intrusion on individual liberties (see, also, *People v Washington,* 46 NY2d 116, 121-122; *People v Brenes,* 42 NY2d 41, 46).[3] In striking a balance between society's interest in privacy and in ferreting out crime, Congress (US Code, tit 18, § 2518, subd [1], par [c]) and the Legislature (CPL 700.20, subd 2, par [d]; 700.15, subd 4), sought to insure that electronic surveillance only be resorted to when it is absolutely necessary to do so (*United States v Kahn,* 415 US 143, 153, n 12) and that it is "not to be routinely employed as the initial step in criminal investigation" (*United States v Giordano,* 416 US 505, 515).[4] No eavesdropping warrant may issue absent "a showing that normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous to employ" (CPL 700.15, subd 4; see, e.g., *United States v Kalustian,* 529 F2d 585).

This is not to say that "all possible" investigative techniques must first be exhausted or that electronic surveillance can only be sought as a "last resort" (see, e.g., *United States v Bailey,* 607 F2d 237, 242, cert den *sub nom.*

---

**3.** The debate over the desirability of utilizing electronic surveillance as a law enforcement tool, continues to the present (see, e.g., Schwartz, The Legitimation of Electronic Eavesdropping: The Politics of 'Law and Order', 67 Mich L Rev 455).

**4.** This requirement may have constitutional underpinnings (see Note, Electronic Surveillance, Title III and the Requirement of Necessity, 2 Hast Const L Q 571, 577-581).

*Whitney v United States,* 445 US 934; *United States v Kerrigan,* 514 F2d 35, 38, cert den *sub nom. Karrigan v United States,* 423 US 924). But the issuing judicial officer, who must test the application in a "practical and commonsense fashion" (Senate Report No. 1097, 90th Cong, 2d Sess, US Code Cong & Admin News, 1968, vol 2, pp 2112, 2190; see *People v Versace,* 73 AD2d 304, 307, *supra*), must be apprised of the nature and the progress of the investigation in order to insure that electronic surveillance is more than a useful tool (*People v Romney,* 77 AD2d 482, 484; *People v Versace, supra*). Mere conclusions of the affiant will not do (e.g., *United States v Kalustian,* 529 F2d 585, 590, *supra; United States v Spagnuolo,* 549 F2d 705, 709).

■ Measured by this "practical and commonsense" standard, we conclude that the showings were sufficient. The first application for the warrant at the meat market contained a 76-page detailed affidavit recounting the beginning of the investigation and referring to the Kelly tapes. It set forth the progress being made and stated that "[m]ultiple police surveillances were attempted during the month of April but * * * continued to reveal little useful investigatory information", that the defendant was reluctant to discuss narcotics activities over the telephone or in public (thus suggesting the need for the "bug"), and that "there was a risk of premature disclosure if the * * * surveillance continued". The renewals each incorporated the prior applications, the preferred procedure (see *Salzman v State of Maryland,* 49 Md App 25; Fishman, Wiretapping & Eavesdropping, §§ 180, 182; Pitler, NY Crim Prac Under the CPL, § 10.52, 1979 Cum Supp, p 328; cf. *People v Koutnik,* 37 NY2d 873), explained that the nature of the investigation remained the same and that the visual surveillance had been fruitless. The law requires no more (see *United States v Todisco,* 667 F2d 255, 258-259, cert den 455 US 906; *United States v Kail,* 612 F2d 443, 447, cert den *sub nom. Freeman v United States,* 445 US 966; *People v Romney,* 77 AD2d 482, *supra; People v Penna,* 53 AD2d 941, 942; cf. *People v Brenes,* 53 AD2d 78, 80, affd on other grounds 42 NY2d 41, 44, n 1, *supra*).

On the question of sealing, defendant complains that one warrant expired at midnight on September 9 but was not

sealed until September 11 at 4:20 P.M. and that another warrant expired at midnight on November 11 and was not sealed until November 13 at 4:00 P.M.[5]

CPL 700.50 (subd 2) requires that tapes be sealed "[i]mmediately" upon the expiration of the period set forth in the warrant in order to protect their integrity (*People v Washington,* 46 NY2d 116, 123, *supra; People v Nicoletti,* 34 NY2d 249, 253). In *People v Edelstein* (54 NY2d 306, *supra*), the Court of Appeals explained (p 310) "that the sealing of tapes on the day following the termination date of a wiretap warrant is generally sufficient to comply with the requirement of immediate sealing" and that (p 309) "[w]hile the requirement of immediate sealing must be strictly construed, the eavesdropping statute also mandates that the courts consider whether the People have offered a satisfactory explanation for any delay which might have occurred".

■ At the hearing in this case, the People established that the delay in sealing the tape procured as a result of the warrant which expired on September 9 was caused by the unavailability of the issuing Justice, under whose supervision the sealing was to be directed (CPL 700.50, subd 2). No specific excuse was tendered with respect to the warrant expiring on November 11. But the People claim that, in light of the midnight termination, the tapes were "in any meaningful sense of the word, sealed the day following the termination date of the warrant". While we urge that sealing be undertaken as soon as feasible and do not desire to encourage sloppy practice, the "day following" requirement set forth in *Edelstein (supra),* which has some flexibility, should be deemed to have been complied with (cf. General Construction Law, § 19; *Matter of Garelick v Rosen,* 274 NY 64; *Aultman & Taylor Co. v Syme,* 163 NY 54).

■ Nonetheless, suppression of the conversations recorded on October 21 is still required. The original warrant for the meat market, obtained on July 13, was extended on August 10 to September 9. It was not until September 15,

---

5. Tapes procured as a result of a warrant that had been issued on September 15, 1981 and expired on October 14 were not sealed until November 13. The People conceded that these tapes were not admissible.

i.e., six days after the extension order had terminated, that an application was made for a further extension which was granted to October 14. A subsequent extension continued the eavesdropping authorization through November 11.

Under CPL 700.40 the People were required to make application for an extension "prior to the expiration of [the] eavesdropping warrant" and, upon a failure to obtain such an extension "eavesdropping must cease and any device installed for such purpose must be removed or permanently inactivated as soon as practicable" (CPL 700.35, subd 2). If the extension of September 15 is invalid, any subsequent extension would also be invalid (*United States v Giordano,* 416 US 505, 529-533, *supra;* Fishman, Wiretapping & Eavesdropping, § 184; see *People v Brown,* 80 Misc 2d 777).

The People offer no explanation for the six-day hiatus. Instead, they claim that they have complied with the spirit of the relevant statutory provisions, noting that the purpose of requiring an application prior to expiration has been said to be to avoid the necessity of removing or permanently deactivating the devices (see *People v Glasser,* 58 AD2d 448, 451). Inasmuch as the testimony at the hearing established temporary deactivation, they urge substantial compliance. We cannot agree.

Because of the "drastic and extraordinary" nature of eavesdropping, the statutory requirements should be strictly construed (*People v Washington,* 46 NY2d 116, 122, *supra;* see, also, *People v Sher,* 38 NY2d 600, 604). Although substantial compliance may suffice where there is a "purely technical defect in the warrant" (*People v Zendano,* 62 AD2d 537, 542), such as a ministerial (e.g., *People v Losinno,* 38 NY2d 316, 318; *People v Fortmuller,* 59 AD2d 947, 948), typographical (e.g., *United States v Todisco,* 667 F2d 255, 259, *supra*) or other error which "lacks the potential for abuse" (*People v Meranto,* 86 AD2d 776, 777; cf. *People v Marino,* 49 NY2d 774),[6] the People cite no case,[7]

---

**6.** We note that commentators urge that substantial compliance deviations should be kept to a minimum (e.g., Burkoff, The Court that Devoured the Fourth Amendment: The Triumph of an Inconsistent Exclusionary Doctrine, 58 Ore L Rev 151; Pulaski, Authorizing Wiretap Applications under Title III: Another Dissent to *Giordano* and *Chavez,* 123 U Pa L Rev 750).

**7.** The only authority cited by the People, *People v Hueston* (34 NY2d 116), illustrates the flaws of their argument. That case concerned the giving of past termination

and we have found none, that would excuse a failure to obtain judicial approval for a substantive act. Indeed, the cases in this State (e.g., *People v O'Meara,* 52 NY2d 990, affg 70 AD2d 890; *People v Sher,* 38 NY2d 600, 604, *supra; People v Mark,* 68 AD2d 315), as well as elsewhere (cf. *United States v Cafero,* 473 F2d 489, 495-498, cert den 417 US 918; *State v Bailey,* 289 Md 143), are to the contrary.

The omission in this case cannot be analogized to a "purely technical defect". The requirement of obtaining an extension prior to expiration of the warrant and of permanent deactivation upon termination are clearly matters of substantive — and probably constitutional (see *United States v Cafero,* 473 F2d, at pp 495-498, *supra*) — importance.[8] They directly implicate an individual's statutory and Fourth Amendment (US Const, 4th Amdt) rights as they place limitations upon the intrusion itself. Moreover, no exigency is involved. A "bright-line" rule has been adopted. It "cannot be treated lightly or with cavalier disregard" (*People v Mark,* 68 AD2d 315, 318, *supra*). Suppression is required irrespective of lack of prejudice to the defendant or good faith of the investigation (*People v Washington,* 46 NY2d 116, 124, *supra; People v Sher,* 38 NY2d 600, 604, *supra; State v Bailey,* 289 Md 143, 154, *supra,* quoting *Katz v United States,* 389 US 347, 356-357; Kelder, Criminal Procedure, 30 Syr L Rev 15, 106).

Aside from the failure to comply with the statutory procedures governing electronic eavesdropping, we would have excluded the tape recordings of October 21 on evidentiary grounds as well. It is basic that when a person is charged with one crime, evidence that he committed others may not be received if it has no bearing other than to show that the defendant is of a criminal bent and thus is likely

notice of eavesdropping (CPL 700.50, subd 3) and the court held that a failure to notify the defendant within the proscribed period could be excused if the defendant was shown to have had actual knowledge of the warrant's existence within the statutory period (34 NY2d, at p 122). The court assumed that, in the absence of such actual knowledge, suppression would be required (34 NY2d, at p 120, citing *People v Tartt,* 71 Misc 2d 955; see, also, *People v Mark,* 68 AD2d 315; but cf. *United States v Fury,* 554 F2d 522, 528, cert den *sub nom. Quinn v United States,* 433 US 910).

**8.** In *People v Meranto* (86 AD2d 776, 777) the Fourth Department apparently viewed a failure to obtain a timely extension as mandating suppression for the court observed, "In view of our holding that the warrant bearing the expiration date of April 6, 1979 may stand, the first extension warrant, signed on that date, is valid because signed 'prior to the expiration of [the] eavesdropping warrant' in compliance with CPL 700.40."

guilty of the crime charged (*People v Ventimiglia,* 52 NY2d 350; *People v Zackowitz,* 254 NY 192; *People v Blanchard,* 83 AD2d 905, app dsmd 56 NY2d 648). "One may not be convicted of one crime on proof that he probably is guilty because he committed another crime" (*People v Goldstein,* 295 NY 61, 64).

The People claim that the evidence could be received under the exception applicable to prove a defendant's identity (e.g., *People v Beam,* 57 NY2d 241). That exception is, however, "of limited application" and may not be utilized unless "the defendant's *modus operandi* [is] sufficiently unique to make the evidence of the uncharged crimes 'probative of the fact that he committed the one charged'" (57 NY2d, at p 251, citing *People v Condon,* 26 NY2d 139, 144; *People v Allweiss,* 48 NY2d 40, 47-48; Richardson, Evidence [Prince, 10th ed], § 180, p 150). In short, since there are no "oddities which alone, or in combination with the other circumstances, serve to distinguish the defendant's criminal acts" (*People v Allweiss, supra,* p 48), the highly prejudicial evidence of subsequent criminal activity was inadmissible (*People v Izzo,* 50 AD2d 905; *People v Laguna,* 34 AD2d 581; cf. *People v Smalls,* 94 AD2d 777).[9].

For the reasons stated, the judgment appealed from should be reversed, on the law, the motion to suppress granted to the extent indicated in this opinion, and a new trial ordered.

DAMIANI, J. P., MANGANO and GIBBONS, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered October 12, 1982, reversed, on the law, motion to suppress granted to the extent that any evidence obtained as a result of the wiretap order granted September 15, 1981 and any subsequent extensions thereof, is suppressed and new trial ordered. No questions of fact were presented or considered.

---

9. The trial court also permitted the prosecution to elicit testimony about other sales, in which the defendant took no part, allegedly occurring on March 26, June 26 and July 13, 1981. Because of defendant's failure to make a specific objection, the propriety of that ruling is not preserved for appellate review (CPL 470.05, subd 2; see *People v Qualls,* 55 NY2d 733; *People v Liccione,* 50 NY2d 850). We need not reach the issue in any event as the People's theory for its admission, that the defendant had "opened the door" (see *People v Melendez,* 55 NY2d 445, 451), may not be applicable at the new trial now directed.