**UNITED STATES of America,**

v.

**Fillipo RAGUSA, et al.**

**CR–83–0429.**

United States District Court,
E.D. New York.

April 30, 1984.

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by William Cunningham and Mark Summers, Asst. U.S. Attys., Brooklyn, N.Y., Murry Richman, Bronx, N.Y., for defendant Golio.

Jeffrey A. Rabin, Brooklyn, N.Y., for defendant Bartolotta.

Jacob R. Evseroff, Brooklyn, N.Y., for defendant Scaduto.

Anthony Lombardino, Kew Gardens, N.Y., for defendant Altamura.

Raymond Sussman, Brooklyn, N.Y., for defendant Logalbo.

Arnold Taub, New York City, for defendant Aiello.

Charles F. Carnese, Brooklyn, N.Y., for defendant Graffeo.

Maria T. Candelaria, Brooklyn, N.Y., for defendant Volpe.

Patrick Burke, Suffern, N.Y., for defendant Ducato.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

In the above-entitled action, all defendants have challenged pursuant to Title 18 § 2518(10), the legality of the interceptions of wire communications authorized by New York State and Federal eavesdropping orders, which the government seeks to use as evidence against them. The defendants' primary contention is that the second wiretap order ("Salemi # 2"), was an illegally obtained extension of the first state order, ("Salemi # 1"). Thus defendants seek to exclude evidence of all conversations authorized by the second eavesdropping order as well as evidence obtained through subsequent "tainted" orders. For the reasons set forth below, defendants' motion to suppress wiretap evidence on these grounds is hereby denied.

*Facts*

The facts relevant to this motion are as follows. On March 30, 1983, the Queens County District Attorney's Office received an eavesdropping warrant from Justice Brennan of the New York State Supreme Court, authorizing the interception of conversations over the telephone of Calogero Salemi, a suspected narcotics dealer. Pursuant to C.P.L. § 700.10(2), this first warrant expired on April 29, 1983. On May 13, 1983, Justice Brennan signed an order authorizing a second thirty-day period of interception over Salemi's telephone (Salemi # 2). During the fourteen-day period between the expiration of Salemi # 1 and the instigation of Salemi # 2, there was no order in effect authorizing interception of oral communications over Salemi's telephone.

The testimony of Detective DiRosa at the hearing on this motion, revealed that upon expiration of the Salemi # 1 wiretap, he permanently deactivated the wiretapping device by turning off the tape recorder, removing the reel of tape and hanging up the "slave phone."[1] These actions rendered the wiretapping device inactive until such time as the second eavesdropping warrant authorized a new wiretap on the Salemi phone. Detective Occhiogrosso testified that on May 14, 1983, he reactivated the wiretapping device.

*Standing*

■ While all of the defendants have moved to suppress the wiretap evidence, only defendant Francesca Bartollotta has standing to challenge the legality of the second wiretap order. Only an "aggrieved person" may challenge the validity of a wiretap order. N.Y.C.P.L. § 710.20; 18 U.S.C. §§ 2510(11), 2518(10)(a). In *United States v. Fury,* 554 F.2d 522 (2d Cir.1977), *cert. denied,* 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978), the Second Circuit defined an "aggrieved person" as a person against whom the wiretap being challenged was directed or one whose conversation was intercepted during the wiretap. 554 F.2d at 525. In the instant case, none of the defendants were named in the second wiretap order and only Francesca Bartollotta, participated in conversations intercepted during the period of this order. Therefore only defendant Bartollotta has standing to challenge the second wiretap order. Moreover, the fact that conversations or other evidence gleaned from the second wiretap were used in later wiretap orders in which the other defendants were named or during which their conversations were intercepted, does not give them standing to challenge the second wiretap. 554 F.2d at 526.

*Choice of Law*

■ In the area of wiretap evidence the general rule is that "federal law controls the admissibility of tape recordings in fed-

eral criminal cases and complaints that the evidence was obtained in violation of state law are of no effect." *United States v. Butera,* 677 F.2d 1376, 1380 (11th Cir. 1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983).

However, in a series of cases, the Second Circuit has asserted the position that under limited circumstances, state evidentiary law shall govern in determining the admissibility of wiretap evidence. *See United States v. Vazquez,* 605 F.2d 1269, 1276–77 (2d Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979); *United States v. Sotomayor,* 592 F.2d 1219, 1223 (2d Cir.), *cert. denied sub nom, Crespo v. United States,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979); *United States v. Manfredi,* 488 F.2d 588, 592 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

In addressing those limited circumstances, the *Sotomayor* court held that state wiretap tape recordings which were not sealed in compliance with state law were nonetheless admissible in a federal criminal proceeding as the state sealing requirement was a "post-interception procedure relating to ... preservation of evidence, as contrasted to the methods used to obtain it." *Sotomayor,* at 1226.

The *Sotomayor* court stated:

We believe that at most *Manfredi* requires us, in determining whether to admit a wiretap obtained by a state officer acting under a state statute, to apply only those more stringent state statutory requirements or standards that are designed to protect an individual's right of privacy, as distinguished from procedural rules that are essentially evidentiary in character.

*Sotomayor,* at 1225.

The *Sotomayor* court also determined that a federal court need not retroactively apply a New York Court of Appeals decision interpreting the relevant statute or its

---

**1.** The "slave phone" was also utilized for the purpose of an authorized ongoing pen register    device as well as the subject wiretap.

exclusionary rule, where the authorities had acted reasonably and evidence was obtained in good faith and in compliance with the prevailing constitutional norms. *Id.* at 1226.

Defendant cites *People v. Gallina,* 95 A.D.2d 336, 466 N.Y.S.2d 414 (2d Dept. 1983) where that court suppressed wiretap evidence obtained after an unexplained six-day delay in securing an extension for further wiretaps in violation of the same statute at issue in the instant case. The Second Department construed N.Y.C.P.L. § 700.40 [2] as being substantive and not procedural in nature and concluded that evidence obtained through the illegal extension, be suppressed. *Id.* at 343, 466 N.Y. S.2d 414.

■ Whether a state statute is substantive or procedural in nature is a question for the district court in a federal action. *See e.g. Sotomayor,* at 1223–25. However, the court need not reach this question to decide the instant motion.

In *Gallina,* the original wiretap order was granted on July 13, 1981, and was extended on August 10 through September 9. On September 15, six days after expiration of the extension order, an application was made for another extension. The application was granted and the extension expired on October 14. A subsequent timely extension continued eavesdropping until November 11. The *Gallina* court suppressed a tape of a conversation which occurred on October 21 because the six-day delay in seeking an extension, tainted the September 15 wiretap and all subsequent extensions. *Id.* at 342–43, 466 N.Y.S.2d 414. The *Gallina* decision was rendered on September 6, 1983.

■ In the instant case the Salemi # 1 wiretap order was granted on March 30, 1983 and expired on April 29. No application for extension had been made during the period of the first order. Evidence adduced at the hearing on this motion indicates that no conversations were taped from April 29, to May 13, the date the second wiretap order was granted. Defendant Bartollota moves to suppress conversations recorded during the second and subsequent wiretaps on the theory that the Second Department interpretation of CPL § 700.40 as set forth in *Gallina* applies in this case and the 14-day delay between wiretap orders thus taints the wiretap evidence.

In this case the Salemi # 2 order was sought prior to the decision in *Gallina,* a case of first impression in New York. In view of the fact that the Second Circuit has held that a federal court need not retroactively apply a New York Court of Appeals decision, *Sotomayor* at 1226, *Gallina,* an Appellate Division case, can hardly be considered as controlling this court's determination.

Moreover, the court finds that the authorities here acted in good faith and in conformity with prevailing constitutional norms. Here, unlike *Gallina,* the government has offered a reasonable explanation for the failure to seek an extension order.[3] Under all the circumstances of this case and the reasoning set forth in *Sotomayor* and *United States v. Peltier,* 422 U.S. 531, 537–38, 95 S.Ct. 2313, 2317–18, 45 L.Ed.2d 374 (1975), this court will not penalize law enforcement officials for failure to anticipate the subsequent interpretation of CPL § 700.40 in *Gallina. See Sotomayor,* at 1226–27.

■ Furthermore, even if this court were to apply the *Gallina* interpretation of New York law, the evidence sought to be suppressed would still be admissible.

*Gallina* unquestionably dealt with an extension of a pre-existing wiretap order, pursuant to CPL § 700.40. There, the court found that there had been "temporary deactivation" of the recording devices. *Id.*

---

2. N.Y.C.P.L. § 700.40 provides in pertinent part that "... prior to the expiration of an eavesdropping warrant, the applicant may apply ... for an order of extension."

3. The government's explanation is that it encountered difficulty in immediately translating the intercepted conversations from Sicilian and Spanish.

at 342, 466 N.Y.S.2d 414. Here, testimony has established that on April 29, 1983 the recording devices were "permanently inactivated" in accordance with CPL § 700.-35(2).[4] Thus, the May 13, 1983 wiretap order was not an extension order, but rather a new wiretap order and as such not controlled by CPL § 700.40.

Accordingly, defendants' motion to suppress the wiretap evidence on the grounds that an illegal extension order was issued, is denied.

So ordered.

---

**4.** N.Y.C.P.L. § 700.35(2) provides in pertinent part that "[u]pon termination of the authorization in the warrant eavesdropping must cease and any device installed for such purpose must be removed or permanently inactivated as soon as practicable." The *Gallina* court did not provide guidelines with respect to the distinction between what it found to be "temporary deactivation" and the § 700.35(2) requirement of permanent inactivation. This court has determined that where there exists a lawful ongoing pen register device, actions to dismantle the listening device, such as those taken by the authorities in the instant case, are sufficient to permanently inactivate the device in accordance with the statute.