■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GIOVANNI TROIA, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Juviler, J.), rendered March 7, 1983, convicting him of criminal sale of a controlled substance in the first and second degrees, after a jury verdict, and imposing sentence.

Judgment reversed, on the law, and new trial ordered. No questions of fact were presented or considered.

Defendant was convicted of criminal sale of a controlled substance in the first and second degrees in connection with two alleged sales of heroin to an undercover officer on July 30, 1981 and August 21, 1981, respectively. Much of the evidence which was admitted at the defendant's trial took the form of electronically intercepted telephone conversations which were recorded pursuant to a series of wiretap orders in effect at the times of the alleged sales. However, at least some portion of the evidence against him consisted of a series of 10 tape-recorded conversations which were electronically intercepted several months subsequent to the last date of sale charged in the indictment, and which constituted proof of uncharged crimes (the so-called "Rib Man" tapes). The tape recordings were admitted on the People's direct case for the ostensible purpose of demonstrating the defendant's intent by showing that he spoke in code when discussing prospective sales of narcotics over the telephone; but, in our view, these conversations, many of which were *not* in code, so clearly indicated the defendant's regular participation in the sale of narcotics as to render whatever probative value they may have had in adding to the People's proof of the use of code completely overborne by the potential for prejudice to the defendant (see *People v Ventimiglia,* 52 NY2d 350, 359-360). Thus, for example, the "Rib Man's" reference to the defendant's being "eleven grams short" in "the thing that you gave me" in their December 30, 1981 conversation is an unmistakable reference to the sale of narcotics. *People v Jackson* (39 NY2d 64), upon which the People purport to rely, is distinguishable on its facts and does not compel a contrary result.

Having concluded that the so-called "Rib Man" tapes were improperly admitted as proof of uncharged crimes, it remains only to be determined whether the remaining electronically intercepted conversations were properly admitted, and, in this regard, we begin by noting that on a codefendant's appeal (*People v Gallina,* 95 AD2d 336), we determined that a sufficient showing of necessity for resorting to electronic surveillance was made with respect to the wiretap orders issued on July 13, 1981 and August 10, 1981 (*People v Gallina, supra,* pp 339-341), and

also rejected defendant's contention that the tapes which resulted from the August 10 order were not timely sealed (*People v Gallina, supra,* p 341). Moreover, since none of the defendant's conversations were intercepted as a result of the wiretap orders issued on June 18, 1981 and September 15, 1981, and since he had no proprietary interest in either of the telephones which was the subject of those orders, he lacks the requisite standing to raise any substantive claims concerning those warrants (see *People v Sergi,* 96 AD2d 911; *People v Gallina, supra,* p 338; *People v Sardegna,* 91 AD2d 671). He does, however, have the requisite standing to challenge the prosecution's failure to promptly seal the resulting tapes in accordance with CPL 700.50 (subd 2) (see, e.g., *People v Edelstein,* 54 NY2d 306, 309), but in light of our determination in *People v Gallina* (*supra,* pp 338-339) and our present determination regarding the inadmissibility of the so-called "Rib-Man" tapes, that issue has been rendered academic.*

We have considered defendant's remaining contentions which have been preserved for our review and find them to be without merit. Lazer, J. P., Gibbons, Bracken and Lawrence, JJ., concur.

---

* Although not technically relevant to our determination, we note that here, as in *People v Gallina* (95 AD2d 336, 341), the People have conceded that the tapes procured as a result of the order dated September 15, 1981, were not timely sealed and are therefore inadmissible.