■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MATTY PRINCIPE, TOM VELEZ, STEPHANIE TUCKER, MARIA GRUEZO and JESSIE THIGPEN, Respondents. (Appeals Nos. 19572-19581.) THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANTHONY MAZZUCCA, Respondent. (Appeal No. 19582.) THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MICHAEL CERRATO, Respondent. (Appeal No. 19583.) — Orders, Supreme Court, New York County

(Michael Dontzin, J.), entered July 11, July 12, October 11, and December 9, 1983, which suppressed evidence obtained pursuant to court-ordered electronic surveillance (wiretaps) and dismissed the indictments in their entirety or in part as to all defendants for legal insufficiency of the evidence presented to the Grand Jury are affirmed. ¶ We affirm for the reasons set forth in the thoughtful opinion of the learned Justice at Criminal Term. We add only that although as asserted by the dissent, the crime of bribery which was the partial basis for the order extending the eavesdropping warrant of April 23, 1982 is an enumerated offense for which interception of wire or oral communications is appropriate under section 2516 (subd [2]) of title 18 of the United States Code, the information upon which the application for, and the order of, extension was based derived directly from communications intercepted pursuant to the initial invalid warrant. Thus, the warrant extending the wiretap is, likewise, invalid and evidence obtained thereby must be suppressed. (*Wong Sun v United States,* 371 US 471.) Concur — Sandler, Sullivan, Kassal and Alexander, JJ.

Kupferman, J. P., dissents in a memorandum with respect to Appeals Nos. 19572-19581 as follows: I would reverse the orders that suppressed wiretap evidence against those defendants who were active participants in the criminal enterprise, and affirm the orders with respect to those defendants who were mere customers and not part of the conspiracy. Leave should be granted to the District Attorney to re-present the evidence to the Grand Jury against the conspirators, to seek indictments against all of such defendants on charges of conspiracy to commit bribery and conspiracy to commit grand larceny. Where appropriate, each of such defendants should be charged with the underlying crimes of grand larceny and bribery, either as a principal or an accessory (see Penal Law, § 20.00). ¶ The present indictments arise out of an investigation of a highly organized criminal network that operated out of the 125th Street Auto School. Defendant Jarret Weinrich, the president and proprietor of the auto school, is the apparent ringleader. Through allegedly corrupt employees of the State Department of Motor Vehicles (DMV) in Westchester, defendants Hayes, Bell and Gruezo, Weinrich was able to process applications for duplicate certificates of title in order to "launder" for resale cars stolen by other members of the network. In addition, Weinrich offered such services as driver's licenses without road tests and inspection stickers without inspections. ¶ The *modus operandi* of the ring came to light after a street-level operative, John Saxon, was arrested while in the process of removing a vehicle identification number (VIN) plate from a car he was stealing. Saxon agreed to cooperate with the investigation and told detectives that he had been stealing cars and reselling them through Weinrich for 10 years. The method followed by Saxon and others in the network was that first he would steal a late-model, usually expensive, car and then he would steal another car of the same make. He would then switch VIN plates, burn one of the cars and leave it in a place where it would be quickly discovered so that any notification to the DMV that it had been stolen would be canceled promptly. Saxon would then take the information on the car to Weinrich who would then obtain a duplicate title and registration, with altered information, and sometimes plates, using the VIN of the car that had been burned. Weinrich would then notarize a forged signature on the transfer of ownership section of the duplicate title, and the car could then be sold to an unsuspecting buyer. His accomplices at the DMV insured that the information on the certificates matched that in the computer. ¶ Based on evidence obtained through an eavesdropping warrant for a telephone at the auto school, defendants were arrested and indicted by the Grand Jury on charges of forgery, criminal possession of a forged instrument, offering a forged instrument for filing,

issuing a false certificate, and conspiracy to commit the foregoing offenses. Weinrich was also indicted for criminal possession of stolen property in the first degree based on evidence that his personal car was a stolen car. ¶ Criminal Term granted motions by all the defendants to suppress the wiretap evidence in its entirety and dismissed the indictments in their entirety against certain of the defendants, and only certain counts of the indictments against other defendants. Criminal Term held that the eavesdropping warrant was illegal because the crimes charged in the indictments are not of the type for which an eavesdropping warrant may be obtained pursuant to the Federal eavesdropping enabling statute (US Code, tit 18, § 2516, subd [2]), which sets forth the minimum Federal constitutional standards that a State wiretapping statute must meet. ¶ The only issue on this appeal is whether it is permissible under the Federal statute to obtain an eavesdropping warrant to investigate this kind of criminal activity. Section 2516 (subd [2]) of title 18 provides that a State prosecutor may obtain an eavesdropping warrant if a State statute so permits "when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion * * * or other crime dangerous to life, limb, or property * * * or any conspiracy to commit any of the foregoing offenses." There is no dispute that the warrant is lawful under the New York implementing statute (CPL 700.05), which specifically authorizes a warrant for each of the offenses charged in the indictments. ¶ In my view, this kind of criminal activity is within the purview of that for which Congress intended wiretapping to be available when it enacted the Omnibus Crime Control and Safe Streets Act of 1968 (US Code, tit 18, § 2510 et seq.). Organized crime was considered one of the specific targets. (See Senate Report No. 1097, p 2234; People v Shapiro, 50 NY2d 747, 764.) As demonstrated by cases interpreting the RICO (Racketeer Influenced and Corrupt Organizations) section (US Code, tit 18, § 1961 et seq.) of the Organized Crime Control Act of 1970, the target intended by Congress was not limited to La Cosa Nostra. (See United States v Aleman, 609 F2d 298, 302-303; Bennett v Berg, 685 F2d 1053, 1063-1064; see, generally, McClellan, The Organized Crime Act (S.30) Or Its Critics: Which Threatens Civil Liberties?, 46 Notre Dame Law 55; Note, Civil RICO and "Garden Variety" Fraud — a Suggested Analysis, 58 St. John's L Rev 93, 100.) ¶ Nor can there be any doubt that the criminal activity here, involving operating an auto theft ring, falls within the scope of inherently serious crimes for which Congress, by the enactment of section 2516 (subd [2]) of title 18, intended wiretapping to be available to State investigators (see United States v Frederickson, 581 F2d 711, 715). The crimes of grand larceny and criminal possession of stolen property are clearly crimes dangerous to property within the intendment of section 2516 (subd [2]) of title 18, especially where one car is burned in order to cover up the theft of another. ¶ Moreover, the interceptions adduced evidence of bribery, one of the specifically designated offenses under the Federal statute. Inasmuch as the District Attorney promptly moved to amend the warrant to include the charge of bribery pursuant to CPL 700.65 (subd 4) (see People v Di Stefano, 38 NY2d 640, 648-650), the evidence should not have been suppressed as against the conspirators. The warrant was properly obtained and executed. In the application for the warrant, the District Attorney stated that the interceptions sought evidence of the crimes of grand larceny and criminal possession of stolen property as well as non-property-related crimes. The interceptions produced such evidence and thus the warrant was valid from its inception. In light of the District Attorney's good-faith reliance upon CPL 700.05 (subd 8), which authorizes an eavesdropping warrant for the forgery and false certificate crimes, leave should be granted to re-present the evidence of grand larceny, criminal possession of stolen property, bribery, and conspiracy to

commit the foregoing crimes to the Grand Jury. ¶ Despite the holding of the Fifth Circuit that, under section 2516 (subd [2]) of title 18, crimes not within subdivision (2) of section 2516, either because they are not, by their nature, inherently serious or are not felonies, may be prosecuted if evidence of such crimes is intercepted pursuant to a valid warrant (see *United States v Pacheco,* 489 F2d 554, 564). I would, nonetheless, affirm the suppression orders with respect to those defendants who were not active participants in the conspiracy. The Federal statute merely prescribes the minimum strictures on wiretapping that a State must follow. It is well settled that a State may set more stringent limits or proscribe wiretapping by State law enforcement personnel altogether. (See *People v Shapiro,* 50 NY2d, at p 763.) Where the only crimes charged against a particular defendant do not fall within the ambit of the designated offenses of subdivision (2) of section 2516 or the catch-all category of crimes dangerous to "life, limb or property", the wiretap evidence against such defendant should be suppressed. Otherwise, the potential for abuse of this extraordinary investigative device is too great. ¶ Accordingly, the orders of the Supreme Court, New York County (M. Dontzin, J.), entered on July 11, 1983, which suppressed physical evidence obtained under an eavesdropping warrant, and dismissed the indictments either in their entirety or in part as against all of the defendants, should be reversed and leave should be granted to re-present the evidence to the Grand Jury as against only the following defendants: Tom Velez, Maria Gruezo, Patty Bell, Lillian Hayes, and Jarret Weinrich, and the other orders, entered on July 11, 1983, should be affirmed.