OPINION OF THE COURT
Harold J. Rothwax, J.
The defendants, husband and wife, have been indicted jointly on 51 counts for criminal usury (Penal Law, *755 § 190.42) and on 16 counts for criminal possession of stolen property (Penal Law, § 165.50). The indictment is the result of an investigation into an alleged fencing operation conducted by the defendant furriers from their place of business, Thrifty Fashions, at 208 West 30th Street in New York County. The investigation focused upon the defendants after an informant of demonstrated reliability passed purportedly stolen fur pelts to an intermediary on several occasions. The intermediary, under police surveillance, apparently sold the pelts to the defendants. The intermediary was subsequently arrested in a robbery of furs, and identified defendants as his fence. He refused to cooperate further. The informant was exposed in an unrelated prosecution. Thereafter, the police obtained permission from the management of the building at 208 West 30th Street to install a video camera in the common hallway opposite the outer door of defendants’ business. The camera allowed officers to observe, without hearing, the hallway area in front of the door and the immediate interior of the premises when the door was opened. The surveilling officers recorded their observations on video tape and kept a log of such observations as they deemed pertinent to the investigation. As a result of six weeks of video surveillance and of information received from the informants, previously noted, the District Attorney obtained an eavesdropping warrant effective July 12, 1983, for the interception of conversations “occurring in the hallway outside of and in the offices of Thrifty Fashions” during defendants’ business hours, Monday through Friday, from 9:00 in the morning until 7:00 in the evening, relevant to the crime of possession of stolen property, involving defendants and “their accomplices, co-conspirators and agents some of whom are as yet unknown.” Included in the affidavit of a police lieutenant submitted in support of the warrant was information obtained the previous day from an informant who stated that he had given defendants fur pelts as collateral against money that he had borrowed from defendants at usurious rates. Once eavesdropping commenced, conversations concerning other usurious loans made by the defendants were intercepted. On August 11, the warrant as amended was extended for 30 days, until September 10. On the expiration date, a *756 Saturday, the Justice who had been designated by the issuing Justice (then on vacation) to supervise execution of the warrant was unavailable, due to religious observances. The supervising Justice had apparently been unavailable from the preceding Wednesday, September 7. The warrant was not, therefore, extended on or before September 10, but was allowed to expire. The eavesdropping devices were deactivated from the termination of authorization under the extended warrant at 7:00 p.m. on Friday, September 9, until after a new eavesdropping warrant was obtained from the Justice designated to supervise the eavesdropping, sometime on Monday, September 12. On September 16, relying entirely upon results of the July 12 warrant and August 11 extension, a search warrant was obtained for the premises of Thrifty Fashions, authorizing the seizure, by photographing, of books and records relating to the making and collecting of usurious loans. On October 11, the September 12 warrant was extended for 30 days. Eavesdropping ceased, however, on Friday, October 28, and the devices were permanently inactivated on Monday, October 31. On October 29, a second search warrant issued for the premises of Thrifty Fashions.
The defendants move to suppress evidence obtained by the video surveillance upon the ground that no warrant was sought to authorize the surreptitious viewing; to suppress evidence obtained by the eavesdropping devices on the ground that usury is not an offense for which electronic surveillance is authorized by the Federal statute (US Code, tit 18, § 2516, subd [2]); and on the ground that interceptions pursuant to the September 12 order were invalid for failure to obtain a further extension of the July 12 warrant prior to the September 10 expiration (CPL 700.40) or to permanently inactivate the devices installed pursuant to the July 12 warrant (CPL 700.35, subd 2). The defendants further move to suppress evidence seized pursuant to the search warrants as fruits of the foregoing alleged violations (CPL 710.20, subds 1, 2, 4).
VIDEO SURVEILLANCE
In People v Teicher (52 NY2d 638, 654-655), the Court of Appeals held that “the standards announced in Berger [v New York, 388 US 41] and Katz [v United States, 389 US *757 347] are applicable with equal force [to] unconsented video electronic surveillance”. The court left open the question whether, under appropriate circumstances, video surveillance may be conducted without a warrant consistently with Fourth Amendment principles. (52 NY2d, at p 650, n 1.)
Under the standards of Katz and its progeny, the beginning of any analysis of an alleged Fourth Amendment violation is whether the movant can claim a reasonable expectation of privacy in the invaded area. (Katz v United States, supra, at p 353; see Rakas v Illinois, 439 US 128, 143, n 12.) The Court of Appeals has held that “[w]hen a party to the conversation consents to its recording * * * the constitutional privacy rights of other participants are not implicated” and no eavesdropping warrant is required. (People v McGee, 49 NY2d 48, 59.) Similarly, the court has held that a third party, who shares an interest in the target premises equal to that of the person against whom the search is directed, may “permit an official inspection of such premises and that this authority is not circumscribed by any ‘reasonable expectation of privacy’ belonging to [the target] co-occupants” (People v Cosme, 48 NY2d 286, 292). Stated otherwise, “an individual who does not possess exclusive authority and control over premises has no reasonable expectation of privacy with respect to those premises” (supra, at p 291).
Applying these general principles to the instant facts, the court finds that the common hallway in which the camera was situated was an area under the joint control of the defendants and their landlord. The landlord’s agent, therefore, had authority to permit official surveillance of this common area without the tenants’ knowledge and, indeed, over the tenants’ objection. (See People v Hailstock, 54 Misc 2d 952, 955-956; see, also, United States v Abel, 548 F2d 591, 592, cert den 431 US 956 [owners consent to installation of beeper in rented airplane].) The use of a video camera to record from and in a common area what could otherwise be seen by the unaided eye did not elevate the intrusion to constitutional dimension (United States v Kim, 415 F Supp 1252, 1258 [binoculars on hallway]; United States v Lace, 502 F Supp 1021,1041 [same]; State v *758 Okubo, 651 P2d 494, 504 [Hawaii] [video tape]; see, also, People v Price, 54 NY2d 557, 563; United States v Knotts, 460 US 276, 283-285).
The court has reviewed the descriptions in the log of video surveillance and finds that the object of surveillance was events in the common hallway. To the extent the camera provided a partial view into the defendants’ premises when the door was opened, the court finds that this interior view was no more than could have been observed by a casual passerby on the way to one of the other businesses adjoining the hallway. (See, e.g., State v Dickerson, 313 NW2d 526, 531-532 [Iowa] [cases collected therein].)
The video tapes are accordingly admissible as evidence within constitutional bounds.
EAVESDROPPING
I
The defendants first contend that the offenses designated in the eavesdropping warrant are not crimes for which such warrant may lawfully issue pursuant to Federal legislation (US Code, tit 18, § 2516, subd [2]). The cited section limits the States’ authority to eavesdrop to instances “when such interception may provide or has provided evidence of the commission * * * of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in * * * dangerous drugs, or other [felonies] dangerous to life, limb, or property” designated by the State’s eavesdropping statute. There is no doubt that the Criminal Procedure Law authorizes eavesdropping to obtain evidence of the designated offenses of criminal possession of stolen property in the first and second degree (Penal Law, §§ 165.45, 165.50) and of usury in the first and second degree (Penal Law, §§ 190.40,190.42). (CPL 700.05, subd 8, pars [b], [e].) However, “examination of New York’s wiretapping provisions reveals that the range of crimes in which electronic interception is permitted is much more encompassing than the Federal standard would seem to admit” (People v Shapiro, 50 NY2d 747, 764) and to that extent “runs afoul of the supremacy clause (US Const, art VI, cl 2)” (p 763).
*759 The court must determine, therefore, whether the offenses under consideration are crimes serious enough in the judgment of Congress, as reflected in the statute and legislative history, to warrant investigation by eavesdropping (People v Shapiro, supra, at p 763). Neither criminal possession of stolen property nor usury is among the offenses specified in subdivision (2) of section 2516 of title 18 of the United States Code. Therefore, in order to qualify as target crimes, these offenses must fall within the category of “crimefs1 dangerous to life, limb or property” (People v Shapiro, supra, at p 764). The legislative history of the Federal statute and recent interpretation of the interrelation between the Federal and State statutes by the Court of Appeals and other courts indicates that, at least with regard to crimes other than those enumerated by Congress (US Code, tit 18, § 2516, subd [2]), the appropriate use of eavesdropping depends upon the circumstances of the particular criminal conduct under investigation rather than upon the nature of the crime in the abstract. In People v Shapiro (supra), the court held that eavesdropping was unjustified where the crime under investigation, sexual abuse in the first degree (Penal Law, § 130.65), “involved only consensual conduct” in the circumstances before the court, despite the inclusion of forcible,compulsion in the definition of means by which the crime could have been committed (50 NY2d, at p 765). The court noted that in instances of sexual abuse “undertaken by means of force” (p 765), eavesdropping could be used “in conformance with the supervening Federal standard” (p 765). Also, the report of the Senate Committee on the bill adopted as subdivision (1) of section 2516 of title 18 of the United States Code, indicates a similarly circumstantial approach to the inclusion, in the list of offenses for which Federal eavesdropping is permitted, of Federal crimes analogous to those at issue here. Specifically, the Committee noted that interstate transportation of stolen property (US Code, tit 18, §§ 2314, 2315) was “included to make it possible to strike at organized crime fencing” (US Code Cong & Admin News, 1968, vol 2, p 2186). The Committee also noted that “[u]nder appropriate circumstances, loan sharking would also be included” and the statute designates any offense including extortionate credit transactions (US Code, tit 18, §§ 892- *760 894). (US Code Cong & Admin News, 1968, vol 2, p 2186; see US Code, tit 18, § 2516, subd [1], pars [c], [f].)
What justifies the use of eavesdropping to investigate the possession of stolen property is the existence of a criminal organization or combination which facilitates the theft and the distribution of stolen goods. The organized receipt of stolen property from various sources over a considerable period of time is a circumstance “ ‘dangerous to * * * property’ ”. (United States v Tortorello, 342 F Supp 1029, 1035-1036, affd 480 F2d 764, cert den 414 US 866; see, also, United States v Tortorello, 480 F2d 764, 783, n 17; People v Seney, 34 NY2d 817; cf. United States v Grant, 462 F2d 28, 33.) Here it was demonstrated to the issuing Justices that the defendants had numerous sources of supply of valuable furs stolen by means including robbery. The recent decision of the First Department in People v Principe (102 AD2d 762, affg upon opn at Supreme Ct, NY County, 1983) is not to the contrary. The conduct at issue there was, according to the trial court, “the issuance of bogus operators’ licenses, auto registration and certificates of title.”
The court also finds that eavesdropping was properly employed in regard to the designated offense of usury, upon the present facts. Authority to prospectively intercept conversations regarding usury was not obtained until August 8, after numerous conversations pertinent to that crime were overheard in the course of executing the warrant in regard to the fencing operation. Among the conversations thus intercepted was a conversation on July 29, among the defendants and “Rick” who described how a friend of his, “Mike,” had been shot in the back and killed the previous day. It appeared from the conversation that “Mike” owed defendants $5,000. During the conversation, Sylvia Winograd stated, “He must of done something wrong, he must owe somebody money.” Joseph Winograd subsequently arranged to collect Mike’s $5,000 debt from Rick. As the repayment schedule was being arranged, Rick stated “as long as you don’t kill me” to which Sylvia Winograd replied, “Right, okay. I’ll tell my office what happened.” It appears that the defendants, at minimum, did not disabuse Rick of the possibility that he would be *761 physically harmed if he failed to pay. In addition, the court notes that in 1971, Joseph Winograd pleaded guilty to numerous counts of usury and attempted coercion. In 1975, he again pleaded guilty to usury upon an indictment which included coercion in the first degree (Penal Law, § 135.65). His criminal record was disclosed to the issuing Justice, at the time of the initial warrant application. As previously noted, the Federal eavesdropping statute specifically designates any offense, including extortionate credit transactions under section 892-894 of title 18 of the United States Code, as subject to electronic surveillance. Congress explicitly acknowledged that “the reputation as to collection practices of the creditor in any community of which the debtor was a member” may be sufficient evidence of coercion where money is loaned at usurious rates and under circumstances in which repayment would be unenforceable by law (US Code, tit 18, § 892, subd [c]). There was, therefore, a sufficient basis for issuance of an eavesdropping warrant in regard to usury “in conformance with the supervening Federal standard”* (People v Shapiro, supra, at p 765; People v Lagano, 105 Misc 2d 665, 666; People v Ardito, 86 AD2d 144, 161-162 [Bloom, J., dissent]).
ii
Defendants further contend that once the authority to intercept under the August 11 extension of the warrant was permitted to expire on September 10, no further interception was lawful under the statute (People v Gallina, 95 AD2d 336). In Gallina (supra), an eavesdropping warrant, as extended, was permitted to lapse for a period of six days before any application for a further extension was made. After the six-day hiatus, during which the eavesdropping device was apparently temporarily deactivated, a further extension was obtained and eavesdropping resumed for the maximum 30-day period and an additional 30-day extension. The government was unable to offer any explanation. *762 for its failure to obtain a timely extension prior to expiration of the authorization (CPL 700.40). The Appellate Division excluded from evidence all interceptions subsequent to the lapsed warrant on the ground that “[t]he requirement of obtaining an extension prior to expiration of the warrant and of permanent deactivation upon termination * * * directly implicate an individual’s statutory and Fourth Amendment (US Const, 4th Arndt) rights as they place limitations upon the intrusion itself” (p 343). The court went on to note that “no exigency” was involved and concluded that “[s]uppression is required irrespective of lack of prejudice to the defendant or good faith of the investigation” (95 AD2d, at p 343; CPL 700.35, subd 2).
The court in Gallina (supra, p 343), despite its reference to the statutory “ ‘bright line’ ” of extension prior to expiration, clearly suggests that a delay in obtaining such extension beyond the period of authorization may be excusable upon appropriately exigent circumstances. This construction is consistent with the Federal Statute (United States v Gigante, 538 F2d 502, 507-508). There is no requirement in the Federal law, however, that an extension be obtained prior to expiration of the original authorization (US Code, tit 18, § 2518, subd [5]). This discrepancy in statutes suggests that our State Legislature intended to apply a more exacting standard in this regard. (See, e.g., United States v Marion, 535 F2d 697, 702; People v Washington, 46 NY2d 116, 122.) In light of the Federal cases upholding the Federal statute, the discrepancy does not appear to be of constitutional dimension, however. Nonetheless, a purely statutory violation may warrant suppression where the violated provision “directly and substantially implement[s] the [legislative] intention to limit the use” of eavesdropping (United States v Giordano, 416 US 505, 527) or plays “a central, or even functional, role in guarding against unwarranted use” of electronic surveillance (United States v Chavez, 416 US 562, 578). Gallina {supra), apparently permits a circumstantial analysis of the role played by the temporal provision of the extension requirement. (Cf. Scott v United States, 573 F Supp 622, 627 [five Circuit Courts of Appeals apply Giordano standard circumstantially].)
*763 Upon the present facts, it does appear that the exigency of the unavailability of the issuing Justice (on vacation in Europe) and of the designated supervising Justice for three days (due to religious observances) prior to expiration of the August 11 extension, and the intervention of a Sunday on the day following expiration effectively precluded prosecutors from complying with the specific temporal requirement of the statute (CPL 700.40). It does not appear, however, that the provision as applied to these facts played a functional role in guarding against the unauthorized use of eavesdropping, since surveillance ceased “[u]pon termination of the authorization in the warrant” as required by statute (CPL 700.35, subd 2) and by the Constitution (United States v Cafero, 473 F2d 489, 497). Moreover, an eavesdropping warrant was issued, de novo, by the supervising Justice on the next court day after expiration. The criteria applied to issuance of warrants de novo and to extensions of preexisting warrants are identical under our statute (CPL 700.40). There is no limitation in the statute upon issuance of successive warrants as opposed to extensions of preexisting warrants (cf. United States v Grant, 462 F2d, at pp 32-33). The application for a new warrant, therefore, entailed precisely the criteria that would have been applied to extension of the former warrant and did not extend the scope of interception an iota beyond what was otherwise permissible. Nor was the scope of interception enlarged or the statute violated by leaving the deactivated listening device on the premises for one day between expiration of one warrant and issuance of the subsequent warrant (CPL 700.35, subd 2). The timing of such pre and postintercept requirements as the placing and removal of the listening device is governed by practical considerations such as avoiding disclosure of the investigation prematurely (People v Glasser, 58 AD2d 448, 451; see Howard v State, 51 Md App 46, 62). Had the authority to eavesdrop terminated altogether on Saturday, September 10, it would not have been unreasonable to delay removal of the devices until Monday, September 12, especially in light of the need to obtain and to execute search warrants for physical evidence known to exist on the premises, and the time needed to arrest the suspects in the investigation, all of which may have been endangered by premature entry to *764 remove the listening devices. Finally, the existence of the deactivated device on the premises did not constitute a search or seizure cognizable under the Fourth Amendment (cf. United States v Butts, 710 F2d 1139, 1152 [automatic beeper]).
If the failure to obtain an extension of the July 12 warrant, as extended, prior to September 10 were held to be a statutory violation warranting suppression, the court finds that there were no fruits of the violation, since no conversations were intercepted during the period between expiration of the August 11 extension and issuance of the September 12 warrant (cf. People v Meranto, 86 AD2d 776). The conversations upon which the September 12 warrant issued were lawfully obtained. (See United States v Ricco, 421 F Supp 401, 404, n 3.) The order authorizing interception prospectively from September 12 was also lawful, in accordance with the applicable statutory criteria (CPL 700.15, 700.20; see People v Arnau, 58 NY2d 27, 33-34). The September 16 search warrant and the seizure of guns and stolen furs pursuant to the October 29 search warrant for Thrifty Fashions were also based upon information derived independently of any electronic surveillance under the September 10 warrant or extension thereof (People v Arnau, supra).
The motion to suppress is denied.
[Portions of opinion omitted for purposes of publication.]

 It is important to recall that coercion is not an element of usury under our State statutes (Penal Law, §§ 180.40, 190.42) and that the applicable standard is statutory, i.e., whether eavesdropping “may provide * * * evidence of the commission of [a] crime dangerous to life, limb, or property” under the circumstances of commission (US Code, tit 18, § 2516, subd [2]; emphasis added). The standard is applicable under the supremacy clause (US Const, art VI, cl 2) and is not an aspect of the probable cause requirement of the Fourth Amendment (US Const, Amdt IV).