Cooke, J.
On the morning of October 14, 1971, Officers Hart, Wooley and Redmond established an observation post in an empty second-floor classroom. The focal point of their surveillance was the sidewalk in front of 305 and 307 West 127th Street, approximately 300 feet away. Three other officers waited in an unmarked police car, remaining in contact via walkie-talkie and ready to respond to the observation team’s instructions.
Patrolman Hart, using the team’s only pair of power binoculars, saw appellant, Kelly Jackson, arrive in front of 305 West 127th Street accompanied by Stephanie Watson. Ms. Watson sat down on the stoop of the apartment, 8 to 12 feet away from where appellant Jackson stood. At 11:35 a.m., Hart observed an unidentified man approach, speak with and give money to Jackson, who immediately turned toward Ms. Watson, raised his right hand and pointed two fingers in the air. The unidentified man walked over to Ms. Watson, was handed two of the glassine envelopes which she was holding in a hard-covered Marlboro cigarette box and walked off. Patrolman *67 Hart told Patrolman Wooley to transmit a description of the buyer and the direction in which he was walking to the backup team, which was done, but the officers in the unmarked car were unsuccessful in their attempt to apprehend the buyer. Ten minutes later, a similar interchange was observed, but on this occasion Jackson’s gesture was with three fingers, and three envelopes passed. Again the back-up team failed to seize the buyer.
. At approximately 12:25 p.m., Patrolman Hart observed a young man, later identified as Kenneth Williams, walk up to defendant. After conversing, Williams handed the defendant money. Hart’s testimony as to what next occurred differs on cross-examination from that given on direct as to which hand Jackson used to signal Ms. Watson. On direct, Hart testified the right, on cross, the left. Upon further questioning, Hart indicated that he was "uncertain” as to whether he saw defendant’s finger raised in a signal to Stephanie Watson and stated that his most recent recollection was that the defendant’s body had partially blocked his view of the signal. After the signal was given, Williams approached Ms. Watson and was handed a glassine envelope which he placed in his right trouser pocket before beginning to walk towards St. Nicholas Avenue. In addition to alerting the back-up team, Patrolman Hart left his observation post and followed Williams up the street. At the corner of St. Nicholas Avenue and West 128th Street and in the presence of two members of the back-up team, Hart stepped up, identified himself to Williams, removed the glassine envelope from Williams’ right trouser pocket and placed him under arrest. Returning to 127th Street, the officers then arrested Kelly Jackson and Stephanie Watson.
Appellant’s primary objection is directed toward the testimony describing the prior uncharged narcotics sales which, he argues, had no probative purpose and served only to establish a criminal disposition. While it is true that evidence of unconnected, uncharged criminal conduct is inadmissible if the purpose is to establish a predisposition to commit the crime charged (People v Fiore, 34 NY2d 81, 84; People v Dales, 309 NY 97, 101; Coleman v People, 55 NY 81, 90), such evidence may be admissible if offered for a relevant purpose other than to establish criminal propensity (People v Fiore, supra; see, e.g., People v McKinney, 24 NY2d 180, 184; People v Gaffey, 182 NY 257, 262; People v Molineux, 168 NY 264, 291-294). *68 The danger that a jury might condemn a defendant because of his past criminal activity rather than his present guilt has been propounded as justification for the exclusion. However, when the prior activity is directly probative of the crime charged, the probative value is deemed to outweigh the danger of prejudice (People v McKinney, supra, at p 184). In People v Molineux (supra, at p 293), this court indicated that "[t]he exceptions to the rule cannot be stated with categorical precision. Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial.”
The trial court admitted the testimony of the uncharged sales on the ground that such testimony tended to prove that appellant and Stephanie Watson were acting in concert. While "acting in concert” is not one of the five Molineux exceptions, it has been said that those categories are merely illustrative, not exclusive (People v Calvano, 30 NY2d 199, 205-206; Richardson, Evidence [Prince—10th ed], § 170, p 140). Certainly, under these circumstances, where Jackson handled the cash and Ms. Watson upon signal delivered the drugs, testimony as to such method of operation was relevant to point up the connection between the two. The value of such testimony outweighs any possible prejudice.
Appellant’s other objections have less substance. During the course of the trial, four photographs taken two weeks prior to the arrest and showing appellant, Ms. Watson and others possibly involved in a drug transaction, were marked for identification by the prosecution. These photographs were, however, introduced into evidence by the defense, which now will not be heard to complain that such introduction constituted reversible error. Nor can we say that it was error for the court to have denied defense counsel’s request that the jury be taken to view the scene of the crime. CPL 270.50 (subd 1) provides that such visit is discretionary with the court and, here, no abuse of that discretion has been shown as a matter of law. That the People raised no objection is certainly not determinative.
As the Appellate Division indicated, the jury instructions, *69 viewed as a whole, were fair and served as a proper guide to the triers of the fact.
Accordingly, we affirm the Appellate Division order.
Chief Judge Bkeitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.