OPINION OF THE COURT
Norman C. Ryp, J.
PROCEDURAL HISTORY
Defendant, Donald Moore (Moore), was indicted on March 9, *155 1984, and following a Wade hearing (suppression motion granted, see decision dated Mar. 25, 1985) tried from February 26-28, 1985, and found guilty by the jury before this court on March 4, 1985, of criminal sale of a controlled substance in the third degree (count 1), and two counts (counts 4 and 6) of criminal possession of a controlled substance in the third degree (Penal Law §§ 220.39, 220.16). The charges against Moore of criminal possession of a controlled substance in the third degree (count 2, Penal Law § 220.16) and criminal possession of a controlled substance in the seventh degree (counts 3, 5 and 7, Penal Law § 220.03) were lesser included offenses, and thus, not considered" by the jury.
Following motion papers, argument and submission, on April 11, 1985, the court granted defendant’s trial motion to set aside the jury’s guilty verdicts as to counts 4 and 6 but denied setting aside the jury’s guilty verdict on count 1.
Defendant, on April 25, 1985, moved for an order, pursuant to CPL 330.30 (1) setting aside the verdict on count 1, or in the alternative, declaring Penal Law § 70.25 (2-a), unconstitutional both on its face and as applied to defendant. In addition, the People have moved for an order reinstating the verdict on count 4.
Defendant and the People have submitted papers in support of their respective positions herein.
CONCLUSIONS OF LAW
a. Motion to set aside verdict on count 1
Defendant’s CPL 330.30 (1) motion to set aside the verdict on count 1 of the present indictment based upon the prosecutor’s alleged improper introduction of evidence of prior uncharged criminal conduct concerning defendant is denied.
Initially, the evidence presented at trial was legally sufficient and adequate, as a matter of law, to support a guilty verdict under count 1 (see, People v Carter, 63 NY2d 530, 536-537 [1984]; People v Reed, 40 NY2d 204, 206-209 [1976]).
Defendant contends and the People deny it was improper to admit testimony on the People’s direct case wherein undercover Police Officer DeGiffarde described observing defendant engage in what appeared to be a drug transaction with an unknown male, immediately prior to the drug sale to Police Officer Gwendolyn DeGiffarde. Defendant submits the People thereby sought to create an inference defendant was involved on an ongoing basis in drug sales. This violated defendant’s *156 rights to due process and a fair trial by introducing evidence of a prior, similar, uncharged criminal act, especially where defendant did not testify.
Defendant herein was charged as acting in concert with codefendant, Andre McKinnon (McKinnon), with Moore negotiating the drug sale, and then "steering” undercover Police Officer DeGifFarde to McKinnon for the exchange of money for drugs held by McKinnon. Police Officer DeGifFarde, on direct examination, testified that she observed Moore engage an unknown male in conversation and direct him into the building at 158 West 141st Street; she then established eye contact and negotiated a drug purchase with Moore, and was thereafter directed into the same building; therein she observed said same unknown male engage in what appeared to be a drug transaction with McKinnon; she then was approached by McKinnon who gave her drugs in exchange for money, but she did not attempt an arrest so as to preserve her undercover status.
The undercover officer’s testimony on the actions of said unknown male vis-á-vis Moore and McKinnon clearly pertained to prior uncharged criminal conduct and such would be inadmissible if the sole purpose was to infer that defendant is of a criminal disposition (People v Vails, 43 NY2d 364, 368 [1977]).
First, the stages of the prior alleged crime overlapped with the stages of the instant offense and, as such, were inextricably interwoven with the instant offense (People v Vails, supra). It is difficult to envision how Police Officer DeGifFarde could have testified fairly and accurately to the stages of the drug sale to her involving Moore, without including her observations of the other alleged crime, since both events were so interwoven. Moreover, Police Officer DeGiffarde’s initial observations involving said unknown male and Moore were the apparent reason her attention was attracted and suspicions were directed towards Moore.
Second, evidence of unconnected uncharged criminal conduct is prejudicial, and not admissible to establish a predisposition to commit the crime charged, preventing the jury from condemning a defendant for past criminal activity rather than present guilt. Such evidence is admissible, however, for the limited purspose of showing (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme or plan, (5) identity, or (6) acting in concert, as examples of when the value of *157 such testimony can outweigh the possible prejudice. (People v Jackson, 39 NY2d 64, 68 [1976]; People v Molineux, 168 NY 264, 293 [1901].)
Testimonial evidence in this case of what appeared to be another drug transaction immediately prior to the present incident was not so highly prejudicial so as to warrant reversal. As noted above, it was probably the reason the undercover officer’s attention was first attracted to and she became suspicious about Moore, reinforced by later seeing the same unknown male inside the building apparently negotiating a drug transaction with McKinnon. Such evidence was directly probative of and tended to establish Moore’s intent, his knowing involvement in illegal narcotics sales, the method of operation, and was thus relevant in connecting Moore as acting in concert (common scheme or plan) with McKinnon, all within the parameters of the crimes charged in the indictment (see, People v Jackson, supra, where two uncharged drug sales showing defendant and woman were acting in concert properly admitted; People v Williams, 50 NY2d 996 [1980], where numerous uncharged drug sales to show method of operation properly admitted; People v Vails, 43 NY2d 364 [1977], supra, where tape recording describing prior uncharged drug deal was highly probative, inextricably interwoven and properly admitted).[1]
Finally, the absence of curative instructions to the jury was rendered harmless in view of the sufficient and substantial if not overwhelming proof of defendant’s guilt. Defendant did not request curative instructions to explain to the jury the limited value of such evidence (intent, knowledge, method of operation), either at the time of the testimony or at the time of the jury charge. This is particularly significant in that defendant submitted a formal written request to charge. Also, defendant did not except to the charge as given and thereby excused the absence of such instructions. (People v Wood, 94 AD2d 849 [3d Dept 1983]; People v Rosado, 79 AD2d 666 [2d Dept 1980]; People v Robbins, 78 AD2d 750 [3d Dept 1980].)
Notwithstanding the absence of a defense request for a *158 curative charge, it may have been preferable for the court to have given curative instructions (see, People v Williams, 50 NY2d 996 [1980]). In considering whether the absence of such instructions was harmless error, the court must evaluate the tainted evidence and the strength of the People’s case absent the taint, remembering that "it is not necessary that the untainted evidence * * * demonstrate undisputable guilt” but rather it must show guilt beyond a reasonable doubt. (People v Schaeffer, 56 NY2d 448, 455 [1982].)
Testimony regarding subject uncharged crime was very brief in its significance and relationship (in sharp contrast) to the extensive testimony of Police Officer DeGiffarde regarding her interaction with defendant, establishing eye contact, negotiating the drug purchase, and being directed to McKinnon to receive the heroin. Related references during summations were also brief.[2]
The People’s case was strong, the proof of the uncharged crime was very limited and not overly prejudicial, and thus, the absence of a limiting instruction was harmless error which did not result in the denial of a fair trial (see, People v James, 98 AD2d 863 [3d Dept 1983]). b. Constitutionality of Penal Law § 70.25 (2-a)
Defendant challenges as unconstitutional both in text and application, the sentencing scheme contained in the Penal Law § 70.25 (2-a) classification, which applies to defendant as a second felony offender and requires that the sentence on the present conviction be imposed as consecutive with his present undischarged term of imprisonment for which he is on parole. Defendant contends that since the subdivision (2-b) classification of Penal Law § 70.25 affords the sentencing court discretion as to whether to impose consecutive or concurrent timé for the class containing violent felony offenders, then the subdivision (2-a) total restriction preventing discretion is unconstitutional as based on class distinctions without meaningful difference.
Subdivisions (2-a) and (2-b) speak to different classes of offenders. The distinctions are as follows: subdivision (2-a) *159 requires consecutive time where defendant is a second felony offender, second violent felony offender, persistent felony offender or persistent violent felony offender; subdivision (2-b) requires consecutive time where defendant is a violent felony offender, unless the court formally finds in the interests of justice that the sentence should run concurrently.
Subdivision (2-a), enacted in 1978, was designed to prevent a new sentence from running concurrently where defendant is a second or persistent felony offender, "whether it is a 'regular’ or 'violent’ offender situation”. (See, Hechtman, 1978 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 70.25, 1975-1984 Supp Pamph, p 231; L 1978, ch 481, § 23.)
Subdivision (2-b), enacted in 1982, was designed to cover a violent felony offender whose offense was committed while at liberty on bail or released on recognizance (ROR) on a pending felony charge. The objective of the sponsor of the bill was to deny a "free ride” to felons that could have received concurrent time on both charges unless the court decided on consecutive time, although the "interest of justice” exception included in the bill’s final form allowed the courts some flexibility (see, Hechtman, 1982 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 70.25, 1975-1984 Supp Pamph, p 230; L 1982, ch 559, § 1). It was this limited flexibility or discretion in subdivision (2-b) which defendant contends in effect exposes the unconstitutionality of the denial of court sentencing discretion in subdivision (2-a).
The class distinctions of which defendant complains are in essence that subdivision (2-b) allows some limited sentencing discretion for nonpredicate and nonpersistent violent felons, while subdivision (2-a) allows no sentencing discretion for predicate and persistent felons whether or not violent.
The constitutional level of scrutiny for equal protection analysis which is proper for evaluating the legality of the difference in treatment of two sentencing schemes is the rational basis standard rather than compelling State interest (Haag v Ward, 632 F2d 206, 208 [2d Cir 1980]), or the middle tier scrutiny where the classification must be substantially related to an important government objective such as sex-based classifications (People v Liberta, 64 NY2d 152, 168 [1984]). Class distinctions under rational basis review must not be arbitrary and must reflect some " 'ground of difference having a fair and substantial relation to the object of the *160 legislation, so that all persons similarly circumstanced will be treated alike.’ ” (Reed v Reed, 404 US 71, 76 [1971], citing Royster Guano Co. v Virginia, 253 US 412 [1920]).
It is apparent that there is a rational basis for treating the two classes of offenders differently. The Legislature granted a very limited amount of sentencing discretion to the court in subdivision (2-b), and may have rationally concluded that such a limited exception was appropriate in the presence of specific mitigating factors for statutory first-time violent felons, but harsher treatment (consecutive time without exception) was appropriate for second or predicate felons, violent or not, who menace society on a continuing basis (see, Haag u Ward, supra; Hechtman, Supplementary Practice Commentaries, op. cit.; Executive Memorandum, L 1982, ch 559,1982 McKinney’s Session Laws of NY, at 2618).
It is also apparent that neither procedural nor substantive due process has been violated. Defendant was afforded the traditional stages in the criminal process, indictment, arraignment, and trial or plea of guilty. The sentencing scheme of which defendant complains is justified as a State regulation of an individual interest reasonably related to the promotion of the safety of society, is not arbitrary or capricious, and defendant had a fair warning at the time of his conduct of the consequences of such conduct as established by the State (see, People v Liberta, supra; People v Buyce, 97 AD2d 632 [3d Dept 1983]; People v Santiago, 51 AD2d 1, 8-9 [2d Dept 1975], revd on other grounds 40 NY2d 991 [1976]). c. Motion to Reinstate Verdict — Count 4
The People concede the correctness of the court’s decision to vacate the verdict as to count 6, but move to reinstate the guilty verdict on count 4, vacated by the court, which involved possession of heroin with intent to sell. The court denies the People’s motion herein and reaffirms its determination that the trial evidence was not legally sufficient to support a guilty verdict under count 4* in that the People failed to sustain their burden of proof beyond a reasonable doubt that defendant possessed subject heroin as required under the Penal Law § 10.00 (8) definition of "possess” (People v Carter, 63 NY2d 530, supra).

. Additional citations are as follows: People v Calvano (30 NY2d 199 [1972]); People v Troia (104 AD2d 389 [2d Dept 1984]); People v Baez (103 AD2d 746 [2d Dept 1984]); People v Smith (103 AD2d 859 [3d Dept 1984]); People v Rose (84 AD2d 645 [3d Dept 1981], affd 57 NY2d 837 [1982]); People v Hyman (78 AD2d 701 [2d Dept 1980]); People v Turner (66 AD2d 904 [2d Dept 1978]); People v Jones (62 AD2d 356 [1st Dept 1978]); People v Willis (52 AD2d 972 [3d Dept 1976]); People v Philpot (50 AD2d 822 [2d Dept 1975]).

. References to the uncharged crime in the trial transcript appear as follows: p 22, lines 11-24; p 23, lines 2-5; p 31, lines 6-9; p 32, lines 6-9; p 33, lines 2-7; p 35, lines 7-12; p 67, lines 9-25, all on the People’s case wherein direct examination of Police Officer DeGiffarde covered 62 pages; on cross-examination of Police Officer DeGiffarde which covered 43 pages, pp 95-98 and p 99, lines 2-5; in summations the People on p 7, and the defense on pp 46-47, and brief references on p 28 and p 53.