OPINION OF THE COURT
William Leibovitz, J.
On this motion by defendant the court must decide whether *343 under CPL 270.50 the jury should be allowed to view a proposed demonstration or experiment at the alleged crime scene. Defendant is charged with possessing two vials of crack cocaine (Penal Law § 220.03) purchased from a street seller under the observation of a police narcotics unit which promptly apprehended the defendant and recovered the vials from his pocket.
A previous trial of this case resulted in a jury disagreement and the declaration of a mistrial. At this retrial defense counsel requests that the jury participate in a demonstration at the place where the drug transaction allegedly occurred. During the preceding trial this court granted defendant’s similar application after the People withdrew their initial objection and consented. That trial jury viewed a demonstration as is hereafter discussed.
Before the present trial commenced, the court informed counsel, as to defendant’s request for a demonstration at the scene, that a decision would be rendered at the appropriate time during trial, i.e., after hearing the relevant testimony. The court instructed counsel not to raise that issue during jury selection or in opening statements, so as to avoid prejudice if the demonstration was not permitted.
Integral to this determination is the trial testimony of the street narcotics unit officers whose observations led to the defendant’s arrest. On the afternoon of November 9, 1988, Officer Luyando was on the roof of a six-story building in a drug-prone neighborhood where she was observing through binoculars the actions of a drug seller standing on a sidewalk diagonally across the intersection, about 270 feet away. Throughout the afternoon she observed him selling crack cocaine vials to numerous buyers. As each buyer approached him, the seller removed a black pouch from beneath a nearby garbage can, took vials from the pouch and handed them to the buyer in return for money.
At about 3:10 p.m. defendant Barnwell approached the seller who again retrieved the black pouch and handed crack vials to Barnwell in return for paper money. As he completed the purchase and walked away, Officer Luyando radioed Barn-well’s description to her apprehending officers in their car and continuously observed defendant until he was stopped by those officers at the next intersection where, as apprehending Officer Coogan testified, he found two vials of crack in defendant’s pocket.
*344 Officer Karpati testified that he was on the rooftop with Officer Luyando as a "backup” while she was observing the street. Using binoculars, he saw the defendant approach the seller, give him money and receive something from the seller. He did not see what was received, but saw the defendant place something in his pocket. That afternoon, from the rooftop Karpati watched many other similar drug sales by the seller at that location, at times seeing the specific crack vials through binoculars and at other times not seeing them.
The same narcotics team earlier that afternoon had arrested two other persons similarly observed from the rooftop buying crack from the seller. It is conceded that both buyers pleaded guilty. The seller was also arrested at the location later that afternoon and his pouch containing 40 vials was seized. It is also conceded that the seller pleaded guilty to making crack sales on that date to unspecified buyers at the time and place in question.
The defense requests that the jury participate in the out-of-court demonstration that occurred during the previous trial. Specifically, defendant proposes to position a designated person on the street, holding up a crack vial at the location where it is charged that defendant bought two vials of crack. Each juror in turn would view that person through binoculars from the rooftop where the police observation unit was situated to determine whether the vial was visible.
The defense argues that it was physically impossible, because of the distance, for the observation officer using binoculars on the rooftop to see crack vials being bought on the street, and that a demonstration at the scene is indispensable for the jury to resolve that question.
The People no longer consent to the jury’s participation in a demonstration as occurred at the first trial. The People contend that CPL 270.50 allows the jury to view the physical "premises or place” involved but does not permit the viewing of a contrived experiment at the scene. The People would consent only to have the jurors view the street location with binoculars from the rooftop, but not to the demonstration involving a crack vial. The defense does not agree.
The granting of a so-called "jury view” of the crime scene has been governed by statute in New York since 1881, when Code of Criminal Procedure § 411 was enacted. CPL 270.50 is the successor statute which, for purposes of this case, essentially restates the former provision. Under CPL 270.50 (1) a *345 Trial Judge has discretion to permit the jury to view "the premises or place” of an alleged crime if the viewing will be "helpful to the jury in determining any material factual issue”. A viewing is not permissible under CPL 270.50 if the physical conditions involved are materially different from the time of the alleged crime. (People v White, 67 AD2d 571 [1st Dept 1979], revd on other grounds 53 NY2d 721 [1981].)
The visibility of events at a crime scene, as a trial issue, does not in itself require the court to grant a jury view of the location. In People v Jackson (39 NY2d 64 [1976]), the Court of Appeals unanimously held that the trial court did not abuse its discretion by denying a request to have the jury visit the scene of an alleged drug sale of a glassine envelope seen by police with binoculars from a distance. The Jackson case facts, for purposes of legal precedent, are indistinguishable from the present case. Both cases involve a drug transaction in the street, observed by a street narcotics unit consisting of an observation team officer using binoculars and an apprehending team in radio contact. In Jackson, the observation officer, situated inside a building 300 feet from the defendant, saw one glassine exchanged for money. In the present case, the observation officer, on a roof 270 feet from defendant Barn-well, saw two vials exchanged for money.
A key factual issue in People v McCurdy (86 AD2d 493 [2d Dept 1982]) was whether a stairway landing was visible from a vestibule below. On appeal it was held error by the trial court to permit the jury to view the scene. The court noted that among the material changes of physical conditions that prohibited such a viewing were the differences in the heights of the jurors and the differing angles of vision they would have of an object a distance away.
In another drug transaction case, the defendant argued that a view of the premises was necessary "so that the jury could determine whether the police officers were positioned in such a location as to be able to observe whether it was defendant vho had met with the informant” (People v Hamilton, 112 AD2d 951 [2d Dept 1985]). The court ruled that the trial court did not abuse its discretion in refusing the jury’s visit to the scene. The court stated that, "it would have been virtually impossible to reconstruct the exact angles of vision from where the officers were viewing defendant’s home” (supra, at 951).
In People v Robinson (133 AD2d 473 [2d Dept 1987]), it was *346 held not an abuse of discretion for the court to refuse a viewing of the scene where an experienced police officer testified to making observations from a rooftop of exchanges of glassine envelopes for money. The court stated that it would have been virtually impossible to reconstruct the exact angles of vision, lighting, and other conditions under which the officer saw several drug transactions through binoculars on the street below.
The court has carefully reviewed the jury’s rooftop viewing of the demonstration conducted at the crime scene during the previous trial, which the court personally attended and observed. All evidence at the present retrial, including the testimony of Officers Luyando and Karpati regarding their observations from the rooftop, has been fully considered, in addition to all relevant case law under CPL 270.50.
As already noted, at the former trial the request for the jury’s visit to the scene was presented to this court by the parties as a consent motion. On reflection, the court believes that insufficient advance consideration was given at the previous trial to substantial legal issues inherent in the jury’s viewing of this out-of-court demonstration.
In retrospect, the court having now witnessed the demonstration, and having considered the applicable law, it is clear that CPL 270.50 does not sanction the jury’s viewing of such an experiment. CPL 270.50 (1) authorizes a jury’s viewing of "the premises or place”, i.e., the physical location of a crime scene, not materially changed. Defendant’s proposed demonstration is not that of a viewing of "the premises or place” within the meaning of CPL 270.50 and the cases cited, but is instead an invention consisting of an experimental human tableau viewed under physical conditions unlike those observed by the officer.
It is particularly noteworthy that in all the previously cited four cases a jury view was denied although ostensibly each defendant sought a view solely of the physical crime scene without also requesting a demonstration or experiment at the location. That line of authority would also deny a jury view in the present case even before reaching the additional issue of the proposed demonstration. However, the decision of this court addresses the issues in full.
A primary responsibility of the Trial Judge before permitting a jury view is to consider whether conditions at the scene would be substantially similar to conditions at the time of the *347 events in the case (Richardson, Evidence § 139 [Prince 10th ed]; Fisch, New York Evidence § 147 [2d ed]). If there is considerable change, "it would be error to order a view” (Pitler, New York Criminal Practice Under the CPL, at 620).
As noted in the cases cited, it is virtually impossible to replicate the particular combination of physical conditions existing at the time the police observations were made of the drug transaction in this case. The proposed demonstration, in which the jurors using binoculars are themselves made participants, cannot reliably reconstruct the police officers’ rooftop observations because of material and significant differences of circumstances. These would include differences in angles of vision; of lighting; of bodily positions taken during the demonstration; of the physical handling and adjustment of the binoculars; of the individual differences in eyesight of the jurors; and in the differences of perception between an experienced police observer of drug transactions and of jurors lacking any such experience.
Defendant’s experiment involving a stationary figure holding up a crack vial obviously differs from the testimony of the observation officer who observed the vials in various positions during a continuous transaction in which the seller took the vials from his pouch and handed them to defendant Barnwell, in return for money.
Additionally, the officer’s viewing of Barnwell purchasing crack vials was not conducted in a vacuum but was preceded and assisted that afternoon by her observations of numerous other identical drug transactions by the same seller at that location in which vials were removed from the same pouch and handed to various buyers. The officer’s trained perceptions on that day alone, much less her experience gained on prior occasions, cannot be reconstructed for the jury’s assistance in their viewing of the proposed demonstration.
The defendant contends that because certain demonstrations are permitted inside the courtroom at a jury trial, this out-of-court demonstration by analogy should also be allowed. However, this court’s own review of the cases allowing a limited demonstration in the controlled atmosphere of a courtroom does not support the notion that CPL 270.50 and its relevant case law, narrowly defining a jury’s viewing of the crime scene, should be modified or diluted so as to allow defendant’s proposed experiment outside of the courtroom. (See, e.g., People v Acevedo, 40 NY2d 701 [1976].) Even court *348 room demonstrations are prohibited, "when ill-designed or not properly relevant to the point at issue, instead of being helpful they may serve but to mislead, confuse, divert or otherwise prejudice the purposes of the trial” (People v Acevedo, supra, at 704).
Courtroom demonstrations or experiments are not governed by statute, whereas the granting of a jury view is statutory. Since People v Thorn (156 NY 286 [1898]), the courts of New York have been cautious in applying the jury view statute. In Thorn, the court warned: "Trial judges should be careful to see that the purpose of the statute is not departed from and the view used for other purposes than that contemplated” (supra, at 298). CPL 270.50 (3) states: "The purpose of such an inspection is solely to permit visual observation by the jury of the premises or place in question”. It is beyond the scope of this court’s decision to determine whether out-of-court demonstrations or experiments, in a general sense, comport with the statutory purpose of viewing "the premises or place” of a crime scene. Suffice it to say that defendant’s proposed experiment clearly does not.
Defendant further argues that a demonstration is indispensable to the jury’s determinations, as indicated by a juror who, after the preceding mistrial, attested to defense counsel that four of the six jurors who viewed the demonstration through binoculars from the rooftop could not see the crack vial, while two jurors did see the vial. The alleged perceptions of jurors in any event would not dictate the court’s exercise of sound discretion in regard to CPL 270.50. However, these claims in fact contradict defense counsel’s central hypothesis on this motion, that it was physically impossible for the observation officer to see crack vials from the rooftop. According to the jurors and also the observing officers, some obviously did see the crack vials, and others did not.
More important is the fact that whether the observation officer saw the crack vials from the rooftop is not the paramount or indispensable factual issue of this case, as defendant professes. Defendant’s effort to focus solely on the viewing of crack vials averts attention from those other telltale observations by the police, that Barnwell approached the seller who was transacting numerous sales, that the seller retrieved his previously observed stash of crack vials contained in a pouch, that he accepted apparent money from Barnwell, and handed something to Barnwell, who then placed it in his pocket. Finally, even independently of Officer Luyando’s rooftop obser *349 vations, the jury’s finding that Barnwell knowingly and unlawfully possessed crack vials when encountered on the street by the police apprehending team would sufficiently prove his guilt.
In reaching this court’s determination, it is immaterial that the People at the previous trial consented to the jury’s viewing of the demonstration. In People v Jackson (39 NY2d, supra, at 68), where the trial court was upheld in refusing the jury’s visit to the scene of a drug transaction, the Court of Appeals observed: "That the People raised no objection is certainly not determinative”. Because this demonstration, previously permitted, has been found specious, the court is obligated to exclude it just as any other fallacious and inadmissible procedure must be barred from the trial. Likewise, it does not matter that the People at this trial have objected to the demonstration but consent to the jury’s rooftop viewing through binoculars of the street alone. The court finds none of these proposals appropriate under CPL 270.50 in this case.
Finally, the court notes that defense counsel’s motion papers significantly fail to cite any case, nor has this court found any instance, in which an appellate court of New York has upheld a demonstration or experiment as sought by defendant.
Accordingly, the court concludes that the proposed out-of-court demonstration is a contrivance not authorized by CPL 270.50. The demonstration cannot reliably reconstruct the original drug transaction, and consequently would violate the cardinal requirement of those cases cited, that there be no material change in the location to be viewed by a jury. Therefore, contrary to the intent of the statute, such a viewing by the jury would not comprise an observation of "the premises or place” of the crime scene. Rather than being "helpful to the jury in determining any material factual issue” (CPL 270.50 [1]), the experiment would distort the facts and divert, confuse and mislead the jury.
Defendant’s motion is denied.