OPINION OF THE COURT
Steven W. Fisher, J.
The principal issue presented on this motion concerns whether the traditional Molineux[1] rule applies in capital cases *111 in New York. The defendant contends that the rule cannot be applied without violating what he maintains is a categorical prohibition against “non-statutory aggravation” in death penalty cases brought in this state.
In the two indictments before the court, defendant John Taylor stands charged with murder in the first degree and lesser crimes in connection with a May 24, 2000 robbery and shooting that left five persons dead and two injured inside a Wendy’s restaurant in Flushing, Queens. The defendant is accused, inter alia, of personally shooting two victims to death, and of causing the deaths of the three remaining homicide victims by commanding his accomplice, Craig Godineaux, to shoot them.[2]
As to each indictment, the People have served and filed a notice of intent to seek the death penalty. By an order dated March 27, 2002, the two indictments were consolidated for trial (see People v Taylor, decision on People’s motion No. 1).
The People now move in limine for permission to introduce evidence at trial to establish that the defendant committed certain uncharged crimes (see People v Ventimiglia, 52 NY2d 350, 361-362 [1981]). They ask to be allowed to prove (1) that in June 1996 the defendant and another person were discovered inside a closed McDonald’s restaurant in Manhattan attempting to open a safe with a torch; (2) that over the course of five days in June 1999 the defendant committed or attempted to commit five gunpoint robberies of McDonald’s and Burger King restaurants; and (3) that in October 1999 the defendant stole money from an office safe in a Wendy’s restaurant in Elmhurst where he had once been employed.[3] The People contend that evidence of that conduct would be relevant and probative on issues in the case and therefore should be admitted at trial.
It is a venerable rule of our criminal jurisprudence that evidence of a defendant’s commission of uncharged crimes is *112 inadmissible when offered solely to prove that the defendant is a person of bad character or criminal disposition and is therefore more likely to have committed the charged crime (see, e.g., People v Alvino, 71 NY2d 233, 241 [1987]; People v McKinney, 24 NY2d 180, 184 [1969]). The rule is said to be one of policy rather than logic (see, e.g., People v Allweiss, 48 NY2d 40, 46 [1979]), inasmuch as it is neither unreasonable nor contrary to experience for a juror to believe that a person who has engaged in criminal behavior in the past may well have done so again (see e.g., People v Zackowitz, 254 NY 192, 198 [1930]; People v Molineux, 168 NY at 313). Indeed, as Professor Wigmore explains: “It may almost be said that it is because of the indubitable relevancy of specific bad acts showing the character of the accused that such evidence is excluded. It is objectionable not because it has no appreciable probative value but because it has too much.” (1A Wigmore, Evidence § 58.2, at 1212 [Tillers rev 1983].)
The policy underlying the rule is designed to prevent conviction on evidence of a defendant’s criminal history and unsavory character rather than his actual commission of the crime charged (see People v Alvino, 71 NY2d at 241; People v Lewis, 69 NY2d 321, 325 [1987]; People v Ventimiglia, 52 NY2d at 359; People v Cook, 42 NY2d 204, 208 [1977]; Prince, Richardson on Evidence § 4-501 [Farrell 11th ed]). In our system, a defendant may not be convicted for who he is but only for what he has done.
That is not to say, however, that evidence of uncharged crimes may never be received against a defendant at trial. What has come to be known as the Molineux rule allows the introduction of such evidence, with appropriate cautionary instructions, where its probative value on a material issue in the case outweighs any prejudicial suggestion of criminal propensity (see, e.g., People v Alvino, 71 NY2d at 242), and where it is not merely cumulative or otherwise unnecessary to the People’s case (People v Ely, 68 NY2d 520, 530 [1986]).
In appropriate circumstances, therefore, it has been held permissible for a court to allow the introduction of evidence of uncharged crimes to prove, among other things, the defendant’s identity as the perpetrator of the charged crime (see, e.g., People v Beam, 57 NY2d 241 [1982]; People v Alexander, 294 AD2d 118 [1st Dept 2002]), his motive for committing it (see, e.g., People v Mees, 47 NY2d 997 [1979]; People v Barnum, 169 AD2d 887 [3d Dept 1991], lv denied 77 NY2d 958), his intent while doing so (see, e.g., People v Bayne, 82 NY2d 673 [1993]; *113 People v Scotti, 232 AD2d 775 [3d Dept 1996], lv denied 89 NY2d 946), his guilty knowledge (see, e.g., People v Marrin, 205 NY 275, 281-282 [1912]; People v Spitaleri, 231 AD2d 593 [2d Dept 1996], lv denied 89 NY2d 867), or that his actions were taken in concert with another (see, e.g., People v Carter, 77 NY2d 95, 107 [1990], cert denied 499 US 967; People v Jackson, 39 NY2d 64, 68 [1976]), or were part of a common scheme or plan (see, e.g., People v Duffy, 212 NY 57, 66-67 [1914]; People v Fiore, 34 NY2d 81 [1974]; People v Smith, 283 AD2d 189, 190 [1st Dept 2001], lv denied 97 NY2d 643), or were not the product of accident or mistake (see, e.g., People v Henson, 33 NY2d 63, 72 [1973]; People v Taylor, 220 AD2d 705 [2d Dept 1995]).[4]
The People’s motion papers suggest that the evidence proffered here is relevant and probative on the issues of the defendant’s identity as the person who committed the crimes charged, his motive for committing them, and the intent with which he did so. Following oral argument, however, the People refined their position to focus on the defendant’s role and motivation in the incident. They now contend that the evidence they seek to introduce is probative and necessary principally to demonstrate that the defendant was the one who planned and orchestrated the crimes, and to show why he wanted the victims dead and how he was able to wield sufficient authority over Godineaux to successfully command him to shoot five of the victims, killing three.[5]
The defendant argues that the proffered evidence is inadmissible, not only because its probative value is far outweighed by its prejudicial impact, but also because the danger of “non-statutory aggravation” makes the traditional Molineux rule inapplicable in death penalty cases in New York.
Under New York’s death penalty law, all aggravating factors are statutory. With one exception not relevant here,[6] aggravating factors are defined elements that raise the level of an intentional killing by a person over 18 years of age from second degree murder to first degree murder (see CPL 400.27 [3]). Thus, in every capital case, the “aggravating-factor” elements, like all others, must be proven at trial beyond a reasonable doubt. Once proven, they are “deemed established beyond a *114 reasonable doubt at the * * * sentencing proceeding and [may] not be relitigated.” (Id.)
Moreover, the law provides that, when determining sentence at the penalty phase of a capital case, “the only aggravating factors that the jury may consider are those proven beyond a reasonable doubt at trial, and no other aggravating factors may be considered.” (Id.)
The defendant argues that, if evidence of uncharged crimes is received at trial, the jury will inevitably consider it as an additional aggravating factor — a so-called “non-statutory aggravator” — weighing in favor of a sentence of death. And the jury will do so, the defendant maintains, regardless of any court instruction to the contrary.[7]
The defendant contends that permitting the jury to consider any such “non-statutory aggravator” in sentencing would directly contravene New York’s death penalty law and therefore would violate his constitutional right to have the state “abide by its own statutory commands” (Fetterly v Paskett, 997 F2d 1295, 1300 [9th Cir 1993], cert denied 513 US 914).
The core of the defendant’s argument is that, because New York law provides that a sentencing jury in a capital case may consider in support of a sentence of death only those aggravating factors defined by the statutory subdivisions under which the defendant is convicted at trial, the jury that determines sentence must be insulated from all so-called “non-statutory aggravators,” including evidence of uncharged crimes. Thus, the defendant argues, the court must either exclude at trial all evidence of uncharged crimes or, if such evidence is indispensable to the People’s proof of guilt, allow its introduction with the proviso that a new jury will be selected to determine sentence in the event of a first degree murder conviction.[8]
I respectfully disagree.
New York law provides that, in making its sentencing determination in a capital case, the jury must decide first whether, beyond a reasonable doubt, “the aggravating factor or factors substantially outweigh the mitigating factor or factors established, if any” (CPL 400.27 [11] [a]). But the law does not require or suggest that every aggravating factor be given the same weight in every case.
*115 For example, in all first degree murder cases arising out of the killing of a police officer, the statutory aggravating factor is that “the intended victim was a police officer * * * who was at the time of the killing engaged in the course of performing his official duties, and the defendant knew or reasonably should have known that the intended victim was a police officer” (Penal Law § 125.27 [1] [a] [i]). A reasonable jury might not give that aggravating factor very much weight in a capital sentencing determination if the evidence showed that, although the defendant knew the victim was a police officer, the homicide was the result of a private dispute, having nothing to do with the victim’s police work, and only fortuitously occurred while the officer was on duty.
On the other hand, jurors might well give the same aggravating factor substantial, even decisive, weight if they learned that the defendant had intentionally killed the officer to prevent her from interrupting his continuing commission of a terrible but uncharged crime.
In an ordinary homicide case not involving the death penalty, proof that the defendant intentionally killed the officer to prevent her from interrupting his commission of another crime would almost certainly be admissible to establish the circumstances surrounding the killing and the motive for its commission (see People v Till, 87 NY2d 835 [1995]; People v Newby, 291 AD2d 460 [2d Dept 2002], lv denied 98 NY2d 679). In a death penalty case, such evidence would arguably have even greater probative value and an additional relevant purpose in that it would materially assist the jury in determining the appropriate weight to give the aggravating factor in the event of conviction. And far from prohibiting the use of such evidence for that purpose, the drafters of New York’s death penalty law seem to have expressly approved it.
In extraordinary circumstances and upon a showing of good cause, the law permits a court to discharge the trial jury and impanel a new jury to determine sentence (CPL 400.27 [2]). Where such a new jury is impaneled, the general prohibition against relitigation of aggravating factors at the sentencing proceeding is relaxed, and the People are permitted to present evidence “to the extent reasonably necessary to inform the [new] jury of the nature and circumstances of the count or counts of murder in the first degree for which the defendant was convicted in sufficient detail to permit the jury to determine the weight to be accorded the aggravating factor or factors established at trial” (CPL 400.27 [6] [emphasis supplied]).
*116 In my view, this represents clear and explicit legislative recognition that evidence of the “nature and circumstances” of a capital murder may be considered by a sentencing jury and may properly influence its determination of the weight to be given the aggravating factors. And there is nothing in the language or history of New York’s death penalty law to suggest any different rule if evidence of the nature and circumstances of the murder happens to include proof of the defendant’s commission of uncharged crimes or other matters unfavorable or unflattering to the defendant.
The flaw in the defendant’s argument on “non-statutory aggravation” is that it confuses evidence of aggravating factors with evidence relevant to the jury’s determination of the appropriate weight to be accorded those factors. There is nothing to indicate that the statutory restrictions that apply to the former apply to the latter as well.
I hold, therefore, that a jury in a capital case in New York may consider on the question of sentence any evidence properly admitted at trial that discloses and explains the nature and circumstances of the charged murder so as to permit the jury to make an informed determination as to how much weight to give the proven aggravating factors. Because such evidence may, in some cases, include proof of uncharged crimes, I reject the broad proposition, advanced by the defendant here, that New York’s statutory structure categorically prohibits the introduction of such proof before a potential sentencing jury, and I turn to the merits of the People’s application at bar.
I start by noting that the principal purpose for which the People seek to introduce evidence of uncharged crimes at trial — to establish the defendant’s role in the incident and his motive for wanting the victims dead — does indeed go to the nature and circumstances of the charged murders.[9] I conclude, however, that the People have failed to show a sufficiently direct and probative link between the defendant’s alleged commission of the uncharged crimes and the nature and circumstances of the murders at issue here.
To begin with, the proffered evidence has little value on the question of the defendant’s identity as the perpetrator. Aside from his own inculpatory statements — oral, written, and *117 videotaped — the defendant stands to be identified by no fewer than three eyewitnesses, including at least one of the two surviving victims, and is further tied to the crime by fingerprint evidence, the murder weapon found in his possession at the time of his arrest, and a surveillance tape which he removed from the crime scene and which actually shows him and his accomplice inside the Wendy’s restaurant. Evidence that the defendant had previously engaged in a variety of larcenous acts against fast-food restaurants is neither probative on the issue of identity in this case nor necessary to establish that the defendant was the perpetrator of the charged crimes. It is therefore not admissible on the issue of identity (see People v Robinson, 68 NY2d 541, 547-548 [1986]; People v Condon, 26 NY2d 139, 142 [1970]).
Moreover, evidence of the perpetrators’ intent in this case is clear and unequivocal. According to the prosecution’s theory, apparently unchallenged by the defense, the seven victims, all Wendy’s employees, were brought to the lower level of the restaurant, bound and gagged, and forced to lie on the floor with bags placed over their heads. The perpetrators then shot each victim in the head, one after the other, killing five and seriously injuring two. Such conduct, if proven at trial, unambiguously evinces an intent to kill, and evidence of the defendant’s prior commission of nonviolent, larcenous crimes at fast-food restaurants does little to bolster the proof of homicidal intent. Such evidence, therefore, is not admissible on that issue (see, e.g., People v Alvino, 71 NY2d at 242; People v McKinney, 24 NY2d at 184-185).
On the issue of motive, the People claim that the defendant wanted the victims dead because he feared that otherwise the three employees who knew him and had previously worked with him would promptly identify him as the perpetrator. But that theory can certainly be advanced without resort to evidence of the defendant’s commission of unrelated and uncharged crimes. Proof that several of the victims knew the defendant, coupled with evidence that he made no effort to hide his identity, would clearly support an inference that the defendant understood that he would be identified as the perpetrator if he allowed the victims to live.[10]
Nevertheless, the People maintain that the defendant’s desire to avoid apprehension was especially strong because he *118 was already under indictment for some of the uncharged crimes and had been offered a sentence of 12 years in a plea bargain. The People argue that this gave the defendant an added incentive to eliminate the witnesses in order to avoid the additional punishment he would face if he were identified and indicted for yet another robbery of a fast-food restaurant.
At the time of the incident, however, the defendant had jumped bail and was a fugitive on the prior indictment. He therefore had no reason to believe that the 12-year offer was still available to him. Moreover, the People’s theory would require the jury to speculate on what additional sentence the defendant believed he might face after another fast-food robbery conviction, and to conclude that, upon finding the added punishment unacceptable, he decided to avoid the risk and instead chance the death penalty by killing seven young people, some of whom he knew. In my view, the proffered evidence does not lead with sufficient directness and force to the conclusions the People would have the jury draw on motive, and its probative value on the issue is far outweighed by its prejudicial impact (see People v Foster, 295 AD2d 110 [1st Dept 2002]; cf. People v Till, 87 NY2d 835, supra).
The People next argue that the evidence of uncharged crimes is necessary to support their position that the defendant’s statements to the police were voluntary. Prior to the defendant’s first formal questioning, his attorney on the prior indicted crimes contacted the police. As a result, the defendant was advised of the contact and was asked whether he wanted the lawyer present. He declined orally, and then signed a form which read:
“I am informed that the police have been contacted by an attorney by the name of Pamela Jordan of Queens Legal Associates who represents me on robbery cases that occurred at a McDonald’s in Queens County in June of 1999. I have not asked Ms. Jordan to represent me on the incident that occurred on Wednesday, May 24, 2000 at the Wendy’s restaurant located on Main Street in Flushing nor does she represent me regarding the Wendy’s incident.
“I am willing to speak to the police about what happened at that Wendy’s.” (See People v Taylor, 2002 NY Slip Op 50096 [U] [Sup Ct, Queens County 2002].)
*119 The People argue that the voluntariness of the waiver and of the defendant’s subsequent statements could be more clearly demonstrated to the jury if evidence describing the prior robberies on which the defendant was represented by counsel were admitted at trial. I do not agree that elaboration of the details of the robberies would be necessary or helpful on the issue, especially since there is no present indication that the defense will seek to challenge the voluntariness of the defendant’s waiver or the statement he made immediately following it (see People v Foster, 295 AD2d at 112).[11]
Finally, the People argue that the jury could conclude from the evidence of uncharged crimes that the defendant’s experience with robberies of other fast-food restaurants cast him in a leadership role so as to enable him to command Godineaux to shoot five of the Wendy’s employees. I cannot agree that the evidence of other robberies would give rise to that inference. The fact that Godineaux may have been willing to defer to the defendant’s experience in the choice of venue for the robbery hardly implies that he would also have been willing to obey his command to kill.[12]
In People v Harris (98 NY2d 452, 490), our Court of Appeals cautioned that “capital trial courts should exercise great caution in making discretionary determinations * * * [because t]he stakes are high for all involved.” In this capital case, I conclude that the proffered evidence of the defendant’s commission of uncharged crimes is not sufficiently probative or necessary to the People’s case to justify its admission at trial.
Accordingly, the People’s motion should be denied in all respects.

. People v Molineux, 168 NY 264 (1901).

. Godineaux was a codefendant on Indictment No. 1845/2000. On January 22, 2001, with the consent of the District Attorney, he pleaded guilty to each count of that indictment in which he was named. On February 21, 2001, Godineaux was sentenced to life without parole.

. These allegations differ slightly from those made in the People’s motion papers. At oral argument, the lead prosecutor corrected the allegations and described more precisely the uncharged crimes the People were asking to prove at trial (see transcript of proceedings at 2603-2608).

. This list of categories is not exhaustive but merely illustrative (People v Rojas, 97 NY2d 32, 37 [2001]; People v Santarelli, 49 NY2d 241, 248 [1980]; People v Jackson, 39 NY2d at 68).

. See, e.g., transcript of proceedings at 2584.

. See CPL 400.27 (7).

. New York’s Pattern Jury Instructions caution the jury that the statutory aggravating factors proven at trial and recited by the court are “the only aggravating factor[s] you may consider in this case” (CJI2d[NY], Capital Sentencing, Basic Final Instructions, at 4-5).

. See, e.g., transcript of proceedings at 2548.

. Because that is so, I have no occasion to consider the situation in which ordinarily admissible Molineux evidence is not at all relevant to the “nature and circumstances” of the charged capital murder, as, for example, where its sole purpose is to establish the defendant’s identity as the perpetrator.

. The People further contend that the defendant’s selection of the Wendy’s restaurant where he was known and his failure to make any effort to conceal his identity strongly suggest that the murders were planned in *118 advance and therefore were especially blameworthy. That theory, however, can also be pursued without any reference to uncharged crimes.

. On this and all other issues, the decision of the court rests on the evidence and arguments presented on this motion. Should circumstances change, the People would be entitled to renew the motion, in limine, as new facts may warrant.

. The People also argue that the evidence they seek to introduce would be helpful in explaining the contents of a note found in the defendant’s suitcase. The note is said to contain the lyrics of a “rap song” written by the defendant which the People see as inculpating him in the crimes here at issue. Assuming without deciding that the note would be admissible at trial, I fail to see how its meaning or significance would be made clearer by evidence detailing the defendant’s commission of uncharged crimes.